STATE of Tennessee, Appellee,

v.

Gary FORD, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 20, 1982.

Permission to Appeal Denied
Nov. 29, 1982.

Thomas E. Cowan, Elizabethton, for appellant.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, Lewis May, Dist. Atty. Gen., Mountain City, David Crockett, Asst. Dist. Atty. Gen., Elizabethton, for appellee.

## OPINION

SCOTT, Judge.

The appellant and his co-defendant, Tom Herman, were charged in a two count indictment with the murder in the first degree of Eldon Fowler, and assault with intent to commit murder in the first degree of Tony Smith. Mr. Herman's case was severed and he was tried separately.

The jury found the appellant guilty of involuntary manslaughter and aggravated assault. His punishment for each offense was set at not less than two nor more than five years in the state penitentiary. The trial judge ordered the sentences to be served consecutively. Probation was denied.

On appeal, the appellant presents two issues for review. First, he contends that it was error for the trial judge to order the sentences to be served consecutively. In the second issue he contends that the trial judge abused his discretion by refusing to grant his application for probation. There is no challenge to the sufficiency of the convicting evidence, but a recitation of the facts will bring these issues into focus.

On June 7, 1979, Local 8024 of the United Steel Workers of America struck the Jarl Extrusions plant in Elizabethton. The

strike was a long and emotional one, not being settled until January 11, 1980. There were numerous incidents of violence before and after the events which led to this prosecution. These included shootings, dynamite throwing, and numerous lesser altercations. The employer, in order to protect its plant, employed Alert Security, Inc. to provide guard service. The guards were supplied with a television camera to videotape violent incidents at the gate.

The appellant was a member of the union. His co-defendant, Mr. Herman, was not. On the night of October 28, 1979, they were riding around in the appellant's car drinking beer. The appellant had a sawed off .12 gauge shotgun. At about 10:30 p.m., the appellant and Mr. Herman drove to the large tent that the union was using as a strike headquarters. Utilizing his citizens band radio public address system, the appellant called Jack Peters over to his automobile. He asked Mr. Peters if he still had the shotgun shells that he had let him have. Mr. Peters returned the shells to the appellant.

At about 11:00 o'clock they went to get more beer, and as they were riding along Mr. Herman began talking about wanting to shoot out the camera at the gate at Jarl. At approximately 12:07 a.m., the appellant drove past the plant and from the moving automobile Mr. Herman fired the shotgun one time. It was loaded with .00 buckshot which had a load of nine pellets. Due to the short barrel of the gun, the pellets spread in a wide pattern. Two struck Mr. Fowler killing him. One struck Mr. Smith in the eye. He lost the sight of that eye.

The appellant drove away and concealed his involvement in the crime. For example, he removed the CB radio from his car the next morning and gave it to his brother. When interrogated he denied that he was in the area at the time of the crime. The crime would probably have never been solved without the assistance of Thomas B. Fletcher whose conscience continued to implore him to reveal who killed the guard. Mr. Fletcher, a member of the union, was in the car with the appellant and Mr. Herman, but insisted on being taken back to strike headquarters before the shooting. Two or three days later he reported what he knew to law enforcement officers.

■ In ordering consecutive sentences the trial judge found that the appellant is a "dangerous offender" as defined in *Gray v. State,* 538 S.W.2d 391, 393 (Tenn.1976), wherein the Supreme Court set forth the five categories of offenders for whom consecutive sentencing is reserved. One of those categories is the dangerous offender which our Supreme Court defined as follows:

> A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed.

In order to determine whether a given offense is a "dangerous offense" within the meaning of *Gray,* one must look to the facts and circumstances of the offense as it actually occurred, not the textbook definition of the offense. Every criminal offense, including murder in the first degree, can be committed with either aggravating or mitigating circumstances. In making decisions regarding sentencing, one must look at the offense as it was committed.

■ Involuntary manslaughter is where it plainly appears that neither death nor any bodily harm was intended, but death is accidentally caused by some unlawful act or any act not strictly unlawful in itself, but done in an unlawful manner and without due caution. *Lee v. State,* 41 Tenn. (1 Cold.) 62, 67 (1860).

In *Lee,* the defendant was a hack driver who drove his team of horses through the streets of Memphis in a fast and reckless manner. A little boy three or four years of age was in the street. Witnesses cried to the defendant to rein up or turn his horses, but the defendant failed to do so. The left knee of the right-hand horse struck the child knocking him down and both wheels on the right side of the hack ran over his little body. The child was taken into a nearby drug store where he died on the counter.

The defendant in that case was charged with murder but was found guilty of involuntary manslaughter. Our Supreme Court observed that:

> Indeed, the evidence, as a whole, warrants the conclusion that the prisoner deliberately saw the danger in which this little child was placed, and yet drove on; and instead of manslaughter, a more proper conviction would have been for murder. The jury, in mercy to the prisoner, must have taken the milder view of the case. 41 Tenn. (1 Cold.) at 66.

In this case the appellant was indicted for murder in the first degree and assault with intent to commit murder in the first degree. Like Lee, the jury, in mercy to the appellant, found him guilty of the lesser included offenses of involuntary manslaughter and aggravated assault.

■ In this case the appellant knowingly drove the automobile from which a shotgun was fired in the direction of innocent guards who were properly doing their duty guarding a plant which was the subject of an emotional strike which was then in its fifth month. The appellant's actions following the crime, wherein he attempted to conceal his involvement and that of the one who fired the shotgun, were inconsistent with an innocent bystander and consistent with complicity in the offenses. As a result of this shotgun blast one guard was killed and the other lost the vision in one eye. Separate and distinct offenses were committed against two individuals by the co-defendant with the appellant's assistance.

The appellant exhibited "little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high". *Gray v. State,* supra. The enormity of that risk is best exhibited by the fact that one of the innocent victims was killed.

There was no error in requiring consecutive service of these sentences.

The proof at the probation hearing revealed that the appellant is thirty years of age, married, and the father of two children. He is currently employed as a carpenter. He has no prior criminal record.

On the Sunday following his release on bond, the appellant started attending church at the Valley Forge House of Prayer, a non-denominational church, where he was subsequently saved. Since that time he has faithfully attended with his family. In addition to the appellant, five witnesses testified in his behalf, including his employer and pastor.

■ The trial judge denied probation, citing as reasons, (1) the aggravating circumstances of the offense, (2) deterrence, and (3) the appellant's untruthfulness on the witness stand.

A trial court's denial of probation will not be reversed absent a showing that the decision was capricious, arbitrary or palpably abusive of the court's discretion. *Stiller v. State,* 516 S.W.2d 617, 620 (Tenn.1974). In order for a reviewing court to find an abuse of this discretion, it must be demonstrated that the record contains no substantial evidence to support the conclusion of the trial judge, giving due consideration to the criteria set forth in TCA § 40–2904(a)(1), and the decisions of our Supreme Court. *State v. Grear,* 568 S.W.2d 285, 286 (Tenn.1978). These criteria include the circumstances of the offense, criminal record, social history, and present condition of the petitioner, including his physical and mental condition where appropriate. TCA § 40–2904(a)(1). The trial judge may deny probation upon the ground of the deterrent effect upon other criminal activity. *Id.* One factor alone may provide a sufficient basis to support the trial judge's decision to deny a suspended sentence. *Powers v. State,* 577 S.W.2d 684, 685 (Tenn.Cr.App.1978).

In this case all of the grounds cited by the trial judge were proper for the denial of probation. Crimes of violence against a person may be the controlling factor in determining whether to grant probation. *State v. Poe,* 614 S.W.2d 403, 404 (Tenn.Cr. App.1981). Exceptional circumstances must be shown in order to support probation in a case involving the death of another person at the hands of the petitioner. *Kilgore v. State,* 588 S.W.2d 567, 568 (Tenn.Cr. App.1979).

■ In this case the appellant was actively involved in extremely reckless conduct which severely endangered the lives of innocent individuals, and cost the life of one. Just as the circumstances of these offenses were sufficiently aggravated to render the appellant a dangerous offender under the standard of *Gray v. State,* supra, they were sufficiently aggravated to support a denial of probation. See: *State v. Travis,* 622 S.W.2d 529, 534 (Tenn.1981).

■ An element of deterrence is present in every case, but the degree of significance of this factor in restraining the offender or curbing the propensity of criminal activity in others varies widely with the class of offense and the facts of each case. *State v. Michael,* 629 S.W.2d 13, 14 (Tenn.1982).

■ Collective bargaining is a legal procedure whereby employees, acting through their duly recognized union, can accomplish together what they could never accomplish individually. A strike is the most potent weapon in the union's arsenal for use against a recalcitrant employer. However, strikes are, by their nature, emotional events. Unrelated factions within the community align themselves behind the union or the company. Other groups support neither. As scabs cross the picket line the probability of violence heightens. As the strike drags on the lack of steady income by the striking workers provides additional tension and the likelihood of violence exacerbates with each passing day. Management may employ goons to perpetrate violence against the union members. Thugs not involved on either side of the controversy but bent on mischief may harass both sides. The whole scenario becomes more explosive with each passing day.

Guerilla type acts such as those perpetrated by the appellant and Mr. Herman serve only to heighten the tension between the parties actually involved. They also produce a reign of terror which affects the community at large. Hopefully, the incarceration of the appellant and others who commit similar acts will serve to deter those who would interfere with a legitimate attempt to conduct the nonviolent form of protest which a strike should be.

■ Finally, in determining whether to grant probation, an applicant's truthfulness is a permissible factor for the trial judge's consideration, along with other factors. *United States v. Grayson,* 438 S.W.2d 41, 50, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978), *State v. Gautney,* 607 S.W.2d 907, 910 (Tenn.Cr.App.1980), *State v. Poe,* supra.

In view of the evidence in this case, it is clear that the appellant was never candid with the court. Though he provided the shotgun and the shell with which the crime was committed, he contended that he had no complicity in the offense and that he "got into it by just being there". He testified that if he could have prevented it he would have. Even though the shotgun was his, it was never found, and he adamantly contended that he doesn't know what happened to it. Clearly, his testimony was less than truthful as he sought probation with all of its privileges.

There was ample evidence to support each of the reasons for denying probation. There was no abuse of discretion, and this issue has no merit.

Finding both of the issues without merit, the judgment is affirmed.

DAUGHTREY, J., concurs.

WALKER, P.J., dissents.

WALKER, Presiding Judge, dissenting.

The appellant was indicted for first degree murder and the case was submitted to the jury on that charge. Under the controverted evidence, the trier of fact found him not guilty of murder in the first degree, not guilty of murder in the second degree, and

not guilty of voluntary manslaughter. As was its prerogative, the trier of fact found that the offense the appellant committed was involuntary manslaughter.

In order to justify consecutive sentencing, the appellant must fall within one of the five classifications enumerated in *Gray v. State*, 538 S.W.2d 391 (Tenn.1976). The majority affirms the trial court's order of consecutive sentencing because the appellant is a "dangerous offender" as defined in *Gray v. State*, supra. I disagree with this portion of the majority opinion and would reverse and modify the judgment to reflect concurrent sentencing.

In *Gray*, it is stated:

"A defendant may be classified as a dangerous offender if the *crimes for which he is convicted* indicate that he has little or no regard for human life, *and* no hesitation about committing a crime in which the risk to human life is high." 538 S.W.2d at 393 (emphasis supplied)

Appellant was convicted of involuntary manslaughter and aggravated assault. Recently this court defined involuntary manslaughter as:

"(A) homicide committed *under such circumstances that it plainly appears that neither death nor bodily harm was intended by the party doing the killing* but that the death was accidentally caused by some unlawful act, or by some act not strictly unlawful in itself but done in an unlawful manner and without due caution, and that death was the natural or probable result of such act."

*State v. Ricker*, 611 S.W.2d 839, 841 (Tenn.Cr.App.1980) (emphasis supplied).

Involuntary manslaughter is essentially the result of an unlawfully reckless accident, but a conviction for this crime does not indicate that a defendant has "little or no regard for human life," one of the requisites of a crime committed by a "dangerous offender", *Gray v. State*, supra, warranting consecutive sentencing.

The appellant does not fall within any of the five categories reserved for consecutive sentences. The judgment should be reversed insofar as sentencing is concerned and modified to order concurrent sentencing.