**STATE of Tennessee, Appellee,**

v.

**Jorge RUBIO, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 8, 1987.

Permission to Appeal Denied by Supreme Court March 14, 1988.

Karl F. Dean, Asst. Public Defender, (at trial and on appeal), Richard Kaiser, Asst. Public Defender, (at trial only), Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Charles E. Bush, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Weakley E. Barnard, Roe Ellen Coleman, Asst. Dist. Attys. Gen., Nashville, for appellee.

OPINION

SCOTT, Judge.

The appellant was convicted of murder in the first degree and was sentenced to life imprisonment. On appeal he has presented one issue, questioning whether the trial judge erred by overruling defense counsel's motion to be relieved.

The appellant, a Cuban, was indicted at the September 1985 term of the Davidson County Grand Jury. At his arraignment on October 25, 1985, the Davidson County Public Defender was appointed as his counsel. Richard L. Kaiser, an Assistant Public Defender, was assigned to represent him and was listed as his counsel of record in the minute entries which followed. He

filed a motion to suppress the statement given by the appellant and otherwise undertook to represent him. Contemporaneously with the filing of the motion to suppress, he also filed a motion to be relieved. The appellant had sent the court a letter indicating his dissatisfaction with his counsel. The motion was heard on February 19, 1986, at which time the appellant was represented by Mr. Kaiser and Karl F. Dean, another Assistant Public Defender. At the hearing the trial judge inquired as to why he wanted his counsel relieved and the following transpired:

> THE COURT: Mr. Rubio, do you want to tell me why that you want Mr. Kaiser in the Public Defender's Office to be relieved of representation of you?
>
> MR. RUBIO: Because—I mean, filing some motions of discovery to try to find out something about the case. And he wanted me to plead guilty for twenty-five years. I told him I couldn't plead guilty for twenty-five years.
>
> THE COURT: And that's why you want him to be relieved?
>
> MR. RUBIO: Uh-huh (yes).
>
> THE COURT: Do you have any reason to believe that he wouldn't adequately and properly prepare for your trial, you having made the decision to go to trial?
>
> MR. RUBIO: Yes. I told him—I got a decision to go to a trial.
>
> THE COURT: That's right. Do you have any reason to believe that he wouldn't properly represent you at the trial?
>
> MR. RUBIO: What I've been thinking about is what he told me, pleading guilty for the twenty-five years, and I told him I wanted to go to a trial.
>
> THE COURT: That still doesn't answer my question. Because he advised you one way—he obviously has to respect your decision to go to trial. Do you have any reason to tell me—to believe that he wouldn't adequately and properly represent you at the trial; some witness he hasn't talked to, some issue he hasn't raised, some matter he hasn't looked into that you wanted looked into?
>
> MR. RUBIO: No. Well, that's the reason, like I said.
>
> THE COURT: You want him to be relieved because he recommended to you that you plead guilty?
>
> MR. RUBIO: Yes.
>
> THE COURT: And that's the only reason?
>
> MR. RUBIO: Well, I mean, after he didn't file a motion—a motion, you know, to find out about the case. I haven't received a notice
>
> THE COURT: He hasn't filed a motion to find out about the case?
>
> MR. RUBIO: Well, no. (Speaking Spanish) I told him about filing a motion for discovery—about discovery and—I cannot explain to you.
>
> THE COURT: Mr. Rubio, it looks like Mr. Kaiser has filed a number of motions in this case. Mr. Kaiser, anything you'd like to say?
>
> MR. KAISER: Your Honor, I—a motion for discovery was filed on the day we met Mr. Rubio. He's been told that. A response to discovery has been received. Some things that were not received, we filed a motion to compel. We have talked to every single witness who was listed on the indictment who would talk to us. We've talked to every single witness Mr. Rubio has asked us to talk to.
>
> Just to sum this up, Mr. Rubio called me the other day and asked me why I haven't filed a motion for discovery, and I explained that I did. I've been receiving calls from the jail from somebody else who claims to represent Mr. Rubio's interest, asking me various other questions about the case, and I've refused to talk to him. I don't know who the person is. He won't tell me who it is. I have an idea who it is. And I think Mr. Rubio is somewhat concerned that I wouldn't talk to that individual, but I would not do that. I wouldn't talk about Mr. Rubio's case with that person, not knowing whether he was acting in Mr. Rubio's best inter-

est or not. I think the letter that was written, was written by the same individual.

And I did recommend that Mr. Rubio enter plea negotiations. It was not at twenty-five years. It was at some years less than that. I did recommend that he accept that. I thought it was a fair offer based on the evidence. And I don't have any further statements to make about Mr. Rubio's complaints.

After asking the Assistant District Attorney General if she had any comments, and receiving none, he then asked the appellant if he had anything further he would like to say, to which the appellant replied that he did not. The trial judge then overruled the motion, making the following statements:

Mr. Kaiser, I know that this puts you in somewhat of an awkward position, but I'm going to overrule this motion to be relieved. Mr. Rubio, I know Mr. Kaiser to be an excellent attorney. From my understanding of this case, he's done everything to protect your rights and to see that you get a fair trial and effective representation at the trial. And there's absolutely nothing wrong with Mr. Kaiser making a recommendation to you. You have obviously decided to go to trial, which is your absolute right, and there's no indication here that Mr. Kaiser should be relieved or is not fully protecting your rights and providing you with effective representation. The motion to relieve Mr. Kaiser is overruled.

The motion to suppress was heard several days later and granted in part. At some time in these proceedings, the case was tried before a jury and a mistrial resulted. However, just when that occurred is unclear from the record.

On May 8, 1986, the case was heard upon a motion to dismiss and another motion of counsel to withdraw. At that hearing Mr. Kaiser presented the appellant's motion to dismiss the charges because a new trial date had not been set within thirty days from the date of the mistrial. Defense counsel explained to the court that he had informed the appellant that the law of Ten-

nessee does not provide for dismissal in that circumstance, but the appellant would not believe him and wanted the motion to dismiss presented to the court. The trial judge summarily overruled that motion. Counsel went on to move for a speedy trial. After discussion between the court and counsel as to an early trial date, June 30 was chosen. Then the appellant, speaking through his interpreter, complained that Mr. Kaiser, without any authority from his client, called the Immigration and Naturalization Service to see if there was any possibility that the appellant could be deported. The appellant wanted to be deported, but contended that he could get himself deported without any help from his counsel. The appellant then cited a section of the Tennessee Code in reference to a speedy trial, to which the court responded:

If Mr. Rubio would pay more attention to Mr. Kaiser and less attention to his jail house lawyer, he'd been in better shape.

In response to further discussion about that point, the trial judge inquired, "Do I take it from all this that Mr. Rubio wants another lawyer?" Through his interpreter he replied, "Maybe it might be better."

Mr. Kaiser explained that the reason that he contacted the INS was to clear up the appellant's misunderstanding that "it didn't matter if he got a day or a life sentence" that he could be deported and "walk away from" his prison sentence. It was clear to defense counsel that this was the reason that the appellant had refused to engage in any plea bargaining. Therefore, he had asked the appellant if he could contact INS to verify their advice to him. Counsel asked the appellant whether an explanation by INS that it was impossible for him to walk away from a life sentence would make any difference to him, to which the appellant replied, "It might."

Counsel went on to join in the appellant's motion to be relieved. The trial judge told the appellant that his counsel "has done an excellent job in representing you" and that it was to the appellant's detriment that he didn't recognize that. He denied the motion to be relieved.

On the morning of trial the appellant again requested that his counsel be relieved and the motion was again denied. His counsel explained how the appellant had adamantly refused to cooperate with them in preparing for trial and that he had taken the position that he was simply "not going to participate in this trial." The appellant then took the stand and testified partly in English and partly in Spanish through his interpreter. He told of his difficulties with his counsel. His complaints about his counsel included his anger at having been falsely accused of having a jail house lawyer helping with his case; denial of a complete transcript of his prior trial; refusal of his counsel to subpoena two witnesses he wanted called (one of whom testified for the prosecution at both trials, the other was the victim's girlfriend); lack of cooperation with the appellant; refusal to "do what I ask him to do for my case;" refusal to ask the questions he wanted asked at the former trial; and refusal to file "a motion for habeas corpus."

At this pretrial session the appellant, contrary to his counsel's advice, refused to don street clothes for the trial, choosing instead to wear the orange jumpsuit worn by Davidson County Jail inmates. He also accused two detectives of bringing him drugs while he was in jail.

This issue was again raised in counsel's motion for a new trial and in a pro se motion filed by the appellant on the day of argument of the motion for a new trial. The trial judge overruled both the motion that counsel be relieved and the motion for a new trial. The co-counsel still represents the appellant in this Court.

In *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983), the United States Supreme Court was faced with a similar situation. In that case Mr. Slappy was charged with five serious felonies and the San Francisco Public Defender was appointed to represent him. The Deputy Public Defender who was assigned to his case represented him at the preliminary hearing and supervised an extensive investigation. Shortly before the trial was to begin that Deputy Public Defender was hospitalized for emergency surgery. Six days before the scheduled trial date a senior trial attorney in the Public Defender's Office was assigned to represent Mr. Slappy. Throughout the trial Mr. Slappy claimed that he did not want the substitute counsel representing him. The substance of his complaint was that, in his opinion, the new counsel was unprepared. When the court refused to dismiss his counsel, Mr. Slappy "announced that he would not cooperate at all in the trial and asked to be returned to his cell." The court urged him to cooperate with his counsel, but he refused, contending that he had no counsel, since he did not have the attorney he wanted. 103 S.Ct. at 1614. Mr. Slappy refused to take the stand to testify, although his counsel had advised him that he should. Ultimately, the jury returned a verdict of guilty of three of the charges, but was unable to reach a verdict on the other two. A week later the unresolved charges were tried. The substitute counsel again appeared for the appellant and this time Mr. Slappy refused to cooperate with or even speak to his counsel. At that trial the jury returned a guilty verdict on the remaining counts. 103 S.Ct. at 1615.

On appeal his convictions were affirmed by the California Court of Appeal and the California Supreme Court denied review. He then sought habeas corpus relief in the United States District Court, which was denied. The United States Court of Appeals for the Ninth Circuit reversed, holding that the Sixth Amendment right to counsel includes "the right to a meaningful attorney-client relationship." *Slappy v. Morris,* 649 F.2d 718, 720 (9th Cir.1981).

The United States Supreme Court held that the conclusion of the Court of Appeals that the Sixth Amendment right to counsel includes "the right to a meaningful attorney-client relationship" "is without basis in the law." 103 S.Ct. at 1617. The court noted that the intermediate court's holding resulted from a misreading of the record and a misreading of the controlling law. Accordingly, the Court of Appeals announced a new constitutional standard that was "unsupported by any authority." 103 S.Ct. at 1616. From their reading of the

record, the members of the United States Supreme Court found that it could reasonably be concluded that Slappy's requests were not in good faith, but were a "transparent ploy for delay." 103 S.Ct. at 1617.

It is worthy of note that the entire Supreme Court concurred in the result in *Slappy.* Justice Brennan filed an opinion concurring in the result, in which Justice Marshall joined. Justice Blackmun concurred in the judgment and Justice Stevens joined in his opinion.

There have been numerous decisions concerning the relief of counsel both before *Slappy* and since. In the post-*Slappy* case of *Wilson v. Mintzes,* 761 F.2d 275, 281 (6th Cir.1985), the United States Court of Appeals for the Sixth Circuit examined a case in which the habeas corpus petitioner expressed dissatisfaction with his *retained* counsel. The court held that unreasonable or arbitrary interference with an accused's right to counsel of choice ordinarily mandates reversal without a showing of prejudice. The court went on to cite the oft-quoted rule that motions for a continuance in order to obtain new counsel are directed to the sound discretion of the trial judge and will be reversed only for an abuse of that discretion. The court cited *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1974), where the United States Supreme Court earlier explained that:

> An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense. (emphasis in original). 761 F.2d at 279, fn. 6.

This Court has previously held that the fact that a defendant chose not to cooperate with competent *appointed* counsel does not entitle him to the appointment of other counsel. It was noted that the "willful refusal of a defendant to cooperate with his attorney is not imputable to either the State or defense counsel." The state's constitutional obligation has been fulfilled by the appointment of counsel, and there is no constitutional requirement that the court continue to appoint additional counsel "until one is appointed with whom the defendant might elect to cooperate." *State v. McClennon,* 669 S.W.2d 705, 707 (Tenn.Cr. App.1984). To hold otherwise would allow the criminal defendant to control the court's docket and effectively prevent the trial from ever taking place.

■ Apparently the appellant was upset because his counsel told him of a plea bargain offer. However, counsel was required to promptly communicate the offer to him. *ABA Standards Relating to the Administration of Criminal Justice, The Defense Function,* § 6.2(a), adopted as guidance to Tennessee courts in *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn.1975).

The appellant was also concerned that his counsel had contacted the Immigration & Naturalization Service in order to clear up the misunderstanding that the appellant had concerning the fact that he was subject to deportation in lieu of incarceration. Again, counsel was carrying out his duty to investigate "the circumstances of the case" and was attempting to "explore all avenues leading to facts relevant to ... (the) penalty." *Id.* at § 4.1.

■ Other than these tenuous complaints and the obvious difficulties that counsel had in communicating with their client due to the language barrier, there is nothing in the record to indicate that counsel was anything but effective in presenting the case for their client. Defense counsel obtained good results for their client in spite of the appellant's lack of cooperation. The first trial resulted in a mistrial. The retrial was a hard fought case which lasted four days. Sixteen witnesses were called by the state. The proof revealed the appellant's guilt and the jury found in accordance with the evidence. Counsel cannot be faulted for the result, only for their derelictions, none being shown by the record.

When the trial judge found that the counsel should not be relieved, he exercised his discretion to require the very able Assistant Public Defenders to continue repre-

senting the appellant. The trial judge found that the appellant was not acting in good faith. On the morning of trial the judge remarked that he was having "a hard time finding anything (the appellant said) at (that) point to be credible."

Where the trial judge has wide discretion, as he does in matters regarding the appointment and relief of counsel, his action will not be set aside on appeal unless it is shown that there was a plain abuse of that discretion. *State v. Fowler,* 213 Tenn. 239, 373 S.W.2d 460, 466 (1963). In order for a reviewing court to find an abuse of discretion, the court must find that there was no substantial evidence to support the conclusion of the trial judge. *State v. Ford,* 643 S.W.2d 913, 916 (Tenn.Cr.App. 1982).

In this case there was no evidence to support any other conclusion than the one reached by the trial judge. The appellant had very effective counsel and for some reason chose not to cooperate with them. He is entitled to neither a reversal of his conviction nor an opportunity to pick and choose his appointed counsel.

The judgment is affirmed.

DUNCAN, J., and LLOYD TATUM, Special Judge, concur.