IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

DECEMBER 1999 SESSION

**FILED**

**February 18, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. E1999-00922-CCA-R3-CD |
| | ) | |
| | ) | Sullivan County |
| v. | ) | |
| | ) | Honorable Phyllis H. Miller, Judge |
| | ) | |
| DONALD WAYNE MARSHALL, | ) | (Aggravated rape) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Stephen M. Wallace
District Public Defender
       and
Gale K. Flanary
Assistant Public Defender
Post Office Box 839
Blountville, TN 37617-0839
(AT TRIAL)

Mark H. Toohey
158 Cherokee Street
Kingsport, TN 37660
(ON APPEAL)

For the Appellee:

Paul G. Summers
Attorney General of Tennessee
       and
Michael J. Fahey, II
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243

H. Greeley Welles, Jr.
District Attorney General
       and
Barry P. Staubus
Assistant District Attorney
       and
Gregory A. Newman
Assistant District Attorney
Post Office Box 526
Blountville, TN 37617-0526

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

_____The defendant, Donald Wayne Marshall, appeals as of right from his

conviction by a jury in the Sullivan County Criminal Court for aggravated rape, a Class

A felony. The defendant was sentenced as a Range II, multiple offender to forty years confinement in the custody of the Department of Correction. He presents the following issues for our review:

1. whether the evidence is sufficient to support the conviction;

2. whether the trial court erred by denying his motions to suppress a knife found at the scene and DNA evidence;

3. whether the trial court erred by ruling that the defendant's previous convictions would be admissible for impeachment if he testified;

4. whether the "untruthful" testimony of state's witnesses deprived the defendant of due process;

5. whether the trial court erred by failing to declare a mistrial when the defendant argued that a juror was asleep;

6. whether his attorney was ineffective for failing to file a motion for the admission of evidence pursuant to Rule 412, Tenn. R. Evid., and whether the trial court erred in its rulings on Rule 412 issues.

We affirm the judgment of conviction.

At trial the victim testified that she had dated the defendant's brother, Rocky Marshall, and that she and Mr. Marshall had previously lived together. She testified that around 7:00 p.m. on August 10, 1996, she went to The Pub, a bar/restaurant in Kingsport, where she ate dinner and drank four beers. She said she received several calls at The Pub from Mr. Marshall, who was at the home of Paul Queen, a mutual friend. She said she went to Mr. Queen's house at 11:30 p.m. She said the defendant; his brother, Mr. Marshall; Mr. Queen; and Mr. Queen's brother were at the house. She said she drank a beer, and everyone danced on the sidewalk in front of the house. She testified that she was wearing a tank top and shorts with a swimsuit underneath and that as she was dancing, Mr. Marshall tried to pull off her top and shorts. She said she stopped Mr. Marshall and went to the restroom. She said that when she came out, Mr. Marshall had passed out.

The victim testified that she tried to awaken Mr. Marshall but was unsuccessful. She said the defendant then began touching her, and she told him to leave her alone. She said the defendant became very upset. She said she tried to use a telephone inside the house but could not dial the correct numbers. She stated that she continued to try to awaken Mr. Marshall and that the defendant continued to try to

2

touch her.  She said the defendant finally told her she could go home, and she left around 2:00 a.m.

The victim testified that she began walking away from the house.  She said she had been walking for a couple of minutes when the defendant came from behind and knocked her into a field.  She said the defendant held a butcher knife to her throat and pinned her down, telling her he would cut her if she were not quiet.  She said the defendant put the knife in the ground and began choking her and telling her to shut up.  She said he then turned her over, pulled down her shorts and swimsuit bottoms, and penetrated her.  She said that when the defendant finished, he got up and walked away.  She said that as he was walking, he asked her if she was going to call the police.  She said that because she was afraid, she told him that she would not.

The victim testified that she then went to The Pub to find her friend, Irene Shipley.  She said she arrived at about 3:00 a.m. and told Ms. Shipley what had happened.  She said Ms. Shipley took her to Ms. Shipley's house, and they called the police.  The victim said the officers talked to her and then took her to Holston Valley Hospital.

Irene Shipley testified that she was working at The Pub on the night of the incident.  She said the victim had been receiving telephone calls at The Pub before leaving around 11:30 p.m.  She said the victim came back around 3:00 a.m., was crying and wet, had grass all over her, and had cuts and scratches.  She said the victim was crying so hard she could not talk, but eventually the victim stated, "Wayne raped me." She said the police were called, and the victim was taken to the hospital.

Dr. Shane Adams testified that he was working in the emergency room of Holston Valley Hospital when the victim arrived around 4:30 a.m.  He said the victim was disheveled, nervous and anxious.  He said she had a bruise and some scrapes and scratches.  He testified that he performed a rape kit test on the victim.  He said that he found no vaginal trauma but that this was not necessarily inconsistent with rape.  Dr. Adams testified that he saw the victim the following day for a follow-up visit and that the

3

victim had bruises on both knees. He said the victim also had bruising around her left eye that was consistent with the type of injury caused by a slap or a hit.

Officer Ray McQueen, with the Kingsport Police Department, testified that he was dispatched to Ms. Shipley's house on the report of a possible rape. He said the victim had red scratch marks on her face, neck and arms. He said the victim was crying and appeared distraught.

Detective David Cole, with the Kingsport Police Department, testified that he was dispatched to the scene of the incident for investigation. He said he found purple strips of cloth and a knife stuck in the ground. He said he then went to the hospital to interview the victim. He said the victim was distraught and had scratches on her body and grass in her hair.

Kelly Smith testified that she is a forensic serologist with the Tennessee Bureau of Investigation (TBI) Crime Laboratory. She testified that she examined DNA collected from the victim's vaginal swabs during the rape kit test and compared it to blood samples from the victim and defendant. She said that the vaginal swabs contained sperm and that the DNA profile of the sperm from the swabs was consistent with the defendant's DNA profile. She testified that the profile is found in less than .02 percent of the white population.

Linda Littlejohn testified that she is a forensic scientist with the TBI. She said she examined the bathing suit the victim was wearing at the time of the offense and compared it to the cloth strips found at the scene. She said the bathing suit was missing several cloth strips that were consistent with the ones found at the scene. Upon the foregoing evidence, the jury convicted the defendant of aggravated rape.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for aggravated rape. Initially, we note that the defendant fails to make any argument or cite to anything in the record. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated

4

as waived in this court." Tenn. Ct. Crim. App. R. 10(b). However, because insufficient evidence would void the conviction, we will address the merits of the issue.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Aggravated rape is defined, in pertinent part, as follows:

. . . unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
(1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon[.]

Tenn. Code Ann. § 39-13-502(a)(1). The victim testified that the defendant attacked her, wielded a knife, forced her to the ground, and penetrated her. Ms. Shipley, Dr. Adams, Officer McQueen, and Detective Cole testified that after the incident, the victim was covered with grass and had scratches, cuts and bruises. A butcher knife was found at the scene, along with strips of cloth that were determined to be consistent with the victim's bathing suit. Finally, the victim's rape kit test revealed sperm of the same profile as the defendant's DNA. We hold that the evidence is sufficient to support the defendant's conviction.

## II. MOTIONS TO SUPPRESS

The defendant contends that the trial court erred by denying his motions to suppress the knife found at the scene and the DNA evidence presented by Agent Smith. The state contends that the evidence was properly admitted.

With respect to the knife, the defendant argues that it was improperly identified and irrelevant. He further argues that the trial court had previously ruled that

5

it was admissible for identification only. The record shows that the victim examined the knife discovered by Detective Cole and testified that it looked the same as the butcher knife used by the defendant. At that point, the trial court admitted the knife into evidence for identification. Detective Cole later identified the knife as the one he recovered at the scene, and the knife was admitted into evidence. The record shows that the knife was properly identified and authenticated. See Tenn. R. Evid. 901.

Regarding the defendant's relevancy argument, Rule 401, Tenn. R. Evid., provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." In light of the fact that the victim testified that the defendant wielded a butcher knife, and a butcher knife was found at the scene, the evidence is relevant to proving the charge of aggravated rape.

With respect to the admission of the DNA evidence, the defendant argues that the evidence was irrelevant because there are too many other people whose profiles would match the DNA. He further argues that the evidence was tainted by Detective Cole. These issues are without merit. DNA evidence is generally admissible pursuant to Tenn. Code Ann. § 24-7-117, and in this case, the evidence is relevant to prove that the defendant was the perpetrator. The defendant's argument goes to the weight of the evidence and not to its admissibility. The defendant provides no support for his contention that Detective Cole contaminated the evidence, and our review of the record reveals none.

### III. PRIOR CONVICTIONS

The defendant contends that the trial court erred by ruling that his prior convictions for armed robbery, aggravated assault and filing a false income tax return would be admissible for impeachment purposes if he testified. See Tenn. R. Evid. 609. He argues that the probative value of the convictions was substantially outweighed by the danger of unfair prejudice and that two of the convictions were more than ten years old. See Tenn. R. Evid. 403, 609(b).

6

We hold that the trial court did not err by ruling that the convictions were admissible. With respect to the convictions for armed robbery and filing a false income tax return, these convictions are probative in that they are crimes of dishonesty that would reflect on the defendant's credibility. Although the aggravated assault conviction is less probative on the issue of the defendant's honesty, it still reflects his inability to conform his conduct to the requirements of the law. See generally State v. Farmer, 841 S.W.2d 837, 841 (Tenn. Crim. App. 1992). Furthermore, because the previous convictions are for crimes of a different nature than aggravated rape, they are not unduly prejudicial. See State v. Ratliff, 673 S.W.2d 884, 885 (Tenn. Crim. App. 1984) ("Where the prior offense is substantially different from the crime charged, the prejudicial effect is minimal.").

The defendant also contends that the armed robbery and aggravated assault convictions are inadmissible because they are over ten years old. Rule 609(b),Tenn. R. Evid., provides that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution." (Emphasis added). The record reflects that the defendant was convicted of armed robbery in 1981 and aggravated assault in 1986. However, the record further reflects that the defendant was not released from prison for these offenses until 1990 and 1993, respectively. Thus, the convictions were within the ten-year period permitted by Rule 609(b).

## IV. TESTIMONY OF STATE'S WITNESSES

The defendant contends that the "untruthful" testimony of state's witnesses deprived him of due process. He argues that the testimony of the victim, Detective Cole and Ms. Shipley was contradictory and, thus, untruthful such that he was deprived of a fair trial. This issue is without merit. No evidence exists that the witnesses were being untruthful. The credibility of the witnesses and the weight to be given to their testimony are issues to be resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

## V. SLEEPING JUROR

7

The defendant contends that the trial court erred by failing to declare a mistrial after the defendant pointed out that one of the jurors had appeared to be asleep. The trial court permitted the attorneys to question the juror outside the presence of the other jury members. The juror explained that she had not been asleep but had only closed her eyes for a moment to rest them. She stated that she had paid attention and listened to all of the evidence and that she had never been asleep during the trial. The trial court denied the defendant's motion. We note that the mere fact that a juror becomes drowsy for a short time is not of itself a ground for a new trial; the defendant must show prejudice. See State v. Chestnut, 643 S.W.2d 343, 346 (Tenn. Crim. App. 1982). In light of the juror's testimony that she had been awake and had not missed any evidence, the defendant has failed to make this showing. This issue is without merit.

## VI. ISSUES RELATING TO TENN. R. EVID. 412

The defendant raises several issues relating to Rule 412, Tenn. R. Evid. Specifically, he argues that (1) his attorney was ineffective for failing to follow the procedural requirements of Rule 412(d); (2) the trial court should have granted his motion for a mistrial or to withdraw upon learning that his attorney failed to follow the procedures of Rule 412(d), which resulted in the exclusion of evidence of prior consensual sex between the defendant and the victim; and (3) the trial court erred by redacting a portion of the victim's medical records relating to the victim's last reported consensual sexual activity.

Rule 412, Tenn. R. Evid., limits the admissibility of evidence about the prior sexual behavior of a victim of a sexual offense and establishes procedures for determining when such evidence is admissible. The rule provides, in pertinent part, as follows:

> Evidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in subdivision (d) of this rule, and the evidence is:
> (1) Required by the Tennessee or United States Constitution, or
> (2) Offered by the defendant on the issue of credibility of the victim, provided the prosecutor or victim has presented evidence as to the victim's sexual behavior, and only to the extent needed to rebut the specific evidence presented by the prosecutor or victim, or

(3) If the sexual behavior was with the accused, on the issue of consent[.]

Tenn. R. Evid. 412(c). The rule mandates the following procedures:

(1) The person must file a written motion to offer such evidence.

(i) The motion shall be filed no later than ten days before the date on which the trial is scheduled to begin, except the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case.

(ii) The motion shall be served on all parties, the prosecuting attorney, and the victim; service on the victim shall be made through the prosecuting attorney's office.

(iii) The motion shall be accompanied by a written offer of proof, describing the specific evidence and the purpose for introducing it.

Tenn. R. Evid. 412(d). The rule further provides that the trial court must conduct a nonpublic hearing to consider the admissibility of the evidence and, if otherwise admissible, must determine whether the probative value of the evidence outweighs the unfair prejudice to the victim.

In the present case, the state filed a motion during trial to prevent the defendant from introducing any evidence of the victim's sexual history, arguing that the defendant had filed no motion and had failed to comply with any of the other procedural requirements of Rule 412(d). The defendant's attorney admitted that he failed to file the motion but argued that the evidence was nevertheless admissible because it was evidence of prior consensual sex between the defendant and the victim. See Tenn. R. Evid. 412(c)(3). The trial court determined that the attorney had failed to comply with the procedures of Rule 412(d) and further determined that the proposed evidence was not newly discovered. See Rule 412(d)(1)(i). Thus, the trial court ruled the evidence inadmissible. In an offer of proof, the defendant testified that he had lived with the victim and his brother and that during this time, he and the victim had consensual sex. The defendant's brother testified that he had witnessed the defendant and victim having sex twice.

**A. Ineffective Assistance of Counsel**

The defendant contends that his attorney's failure to follow the procedural requirements of Rule 412(d) resulted in the ineffective assistance of counsel in that it

precluded him from asserting consent as a defense and forced the attorney to change strategies in the middle of the trial. The state contends that the defendant has not demonstrated prejudice.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n. 2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

We also note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

We hold that although the attorney should have filed the appropriate motion under Rule 412(d), the defendant has failed to demonstrate prejudice. First, the

10

record shows that the defendant was not precluded from presenting consent as a defense. The defendant's attorney questioned the victim about whether she had previously had consensual sex with the defendant, and he continued to argue consent. The record shows that the attorney did not abandon strategies in the middle of trial but rather presented alternate theories to the jury. Furthermore, the state presented strong evidence of aggravated rape. The victim's testimony that the sex was not consensual was supported by her physical and emotional condition after the attack. Dr. Adams, Ms. Shipley, Officer McQueen and Detective Cole all testified that the victim had scratches, bruises and red marks on her body. They testified that she had grass in her hair and clothes and that she was crying and distraught. In addition, Detective Cole testified that he found a butcher knife in the ground at the location of the attack, supporting the victim's testimony that she was forced to have sex at knifepoint. In light of the ample proof of force presented by the state, the defendant has failed to demonstrate that he was prejudiced by his attorney's failure to follow the requirements of Rule 412(d).

### B. Motion for a Mistrial or to Withdraw

The defendant contends that the trial court erred by failing to declare a mistrial or to allow his attorney to withdraw upon learning of his attorney's failure to file the motion pursuant to Rule 412(d), Tenn. R. Evid. The record shows that after the trial court found the evidence to be inadmissible for failing to comply with the procedural requirements of the rule, the defendant's attorney requested a mistrial or to withdraw, arguing that his inability to present evidence of prior consensual sex between the victim and the defendant essentially precluded him from effectively defending the case. The trial court denied the motions and specifically found that no manifest necessity existed to require a mistrial. See State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991).

The decision of whether to grant a mistrial is within the sound discretion of the trial court. State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). This court will not disturb that decision unless there is an abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990); State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). With respect to motions to withdraw, the trial court may, upon

11

good cause shown, permit the withdrawal of an attorney appointed to represent an indigent defendant. Tenn. Code Ann. § 40-14-205(a). The trial court has wide discretion in matters regarding the appointment and relief of counsel, and its decision will not be set aside on appeal unless the defendant shows an abuse of discretion. State v. Rubio, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987).

We hold that the defendant has not shown that the trial court abused its discretion in denying the motions. He has shown no manifest necessity that would require a mistrial nor has he shown good cause that would require withdrawal, particularly in light of our previous holding that he was not prejudiced by his attorney's inability to present evidence of prior consensual sex.

### C. Redacted Medical Records

The defendant contends that the trial court erred by redacting a portion of the victim's medical records that were admitted into evidence. The record reflects that the defendant sought to introduce medical records from Holston Valley Hospital relating to the victim's treatment for the rape. The records included a portion filled out by the victim wherein she reported her last consensual sexual intercourse with a different partner to be at 1:00 a.m. on August 9, 1996. The defendant argued that the evidence was admissible pursuant to Rule 412(d)(4)(ii), Tenn. R. Evid., which provides for limited admissibility of evidence of sexual activity with persons other than the defendant to rebut or explain scientific or medical evidence. The state sought to have that portion of the records redacted because of the defendant's failure to follow the procedural requirements of Rule 412(d). The trial court determined that the defendant's failure to comply with the rule required redaction. The defendant has not shown that the trial court erred, and the record supports its determination.

In consideration of the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

12

_____
David H. Welles, Judge

_____
Jerry L. Smith, Judge