Kenneth Ray CLEMENTS *v.* STATE of Arkansas

CR 91-160                                                817 S.W.2d 194

Supreme Court of Arkansas
Opinion delivered October 7, 1991

*Ray Hartenstein*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Kenneth Ray Clements, brings this interlocutory appeal alleging that the trial court's removal of his appointed attorney, Richard Atkinson, violated his sixth and fourteenth amendment rights to counsel under the United States Constitution and his right to counsel under Art. 2, Section 10 of the Arkansas Constitution. The State agreed with Clements and has waived its right to file a brief in response. We also agree, and reverse and remand.

This case involves the retrial of Clements for capital murder in the shooting death of police officer Ray Noblett. *See Clements v. State*, 303 Ark. 319, 796 S.W.2d 839 (1990). On April 23, 1991, Messrs. Richard Atkinson and Kenneth Suggs were appointed by Judge Floyd Lofton to defend Clements at his second trial. Judge Lofton was assigned to the case following the recusal of the Faulkner County judges. A trial date was scheduled for June 24, 1991.

At a pretrial hearing on June 17, Atkinson moved for a continuance of the June 24 trial date, citing the voluminous nature of the discovery, the time needed to review the transcript and documents from the previous trial, and the fact that a new theory of defense was being developed. Judge Lofton found both Messrs. Atkinson and Suggs negligent, held them in contempt of court, fined them $1,000 each, and removed them from the case. Judge Lofton appointed attorneys, Messrs. Ray Hartenstein and Blake Hendrix, as replacements. [Mr. Atkinson has filed a separate appeal with this court, challenging the contempt citation, Case No. 91-191, filed July 10, 1991.]

Clements now appeals, requesting the reinstatement of Mr. Atkinson. Clements stated that he was not pleased with Mr. Suggs' representation, and the record reflects Mr. Suggs did not object to his discharge from the case.

In order to provide a full understanding of what occurred at

the pretrial conference, we find it necessary to set out the entire record colloquy pertaining to Mr. Atkinson's motion for continuance.

MR. ATKINSON: Your Honor, at this time I'd like to make an oral motion for a continuance —

THE COURT: We've already ruled on that.

MR. ATKINSON: — in this case. Your Honor, I'd like to make a record.

THE COURT: Your man says he's ready to go. Says he's satisfied with you.

THE DEFENDANT: I said I was satisfied with the attorneys. I never said anything about satisfied with the trial, your Honor.

THE COURT: Well, we haven't even started the trial yet.

THE DEFENDANT: I know it. But you said I said I was satisfied with it.

THE COURT: Well, you told me you were satisfied with it.

THE DEFENDANT: With the attorneys.

THE COURT: Well, we'll — we'll —

THE DEFENDANT: I haven't said anything about trial.

MR. ATKINSON: Your Honor, in all fairness, I think you were asking Mr. Clements to make conclusions that an attorney would have to make as far as readiness for trial.

THE COURT: Well —

MR. ATKINSON: I don't think that he has the expertise to make those determinations. And from discussions prior to and up until this morning, it is Mr. Clements' desire that this case be continued based upon —

THE COURT: Well, he hasn't —

MR. ATKINSON: — his consultation with his counsel.

THE COURT: But he hasn't told me why. He wants some things done but he doesn't know what they are. And, Mr. Atkinson, are you telling me that you've been negligent?

MR. ATKINSON: No, your Honor, I am not.

THE COURT: Well —

MR. ATKINSON: I am telling you that sixty days has not been sufficient time to prepare for this case.

THE COURT: Why isn't it?

MR. ATKINSON: Because the case is too complex. The discovery is too much. There are piles and piles of papers that need to be gone through. I was not privy to this trial the first time it was tried. I have a transcript of that trial —

THE COURT: Have you read it?

MR. ATKINSON: — which I have read.

THE COURT: Well.

MR. ATKINSON: I have read that transcript.

THE COURT: Well, that's —

MR. ATKINSON: In all fairness to Mr. Suggs, Mr. Suggs has not read that transcript. It's been in my possession. But Mr. Suggs has not read that transcript. Your Honor, the discovery has not been completely digested by Defense in order to completely develop the defense that's been offered. This defense was not offered at the first trial.

THE COURT: Which is amusing to me. But go ahead.

MR. ATKINSON: I do not know why the defense was not offered at the first trial. I can't answer for that. I was not defense counsel —

THE COURT: Well, you know, we don't know that it will be offered at the next one either. We may find another one.

MR. ATKINSON: That's very correct, your Honor. But

there is no way that defense can be readied and properly presented fairly for this man on the twenty-fourth.

THE COURT: If that is so, Mr. Atkinson, then the Court will have no choice but to find you negligent and in contempt, and so with Mr. Suggs, because you represented to this Court that you could and would get ready. I sent notices out to you. You both concurred in this trial date. And all I hear you saying is that, "We've sat on our fanny and not done anything about this and we want a continuance." But you can't tell me what it is you want to do. And you have no assurance — I have no assurance that if I give you another thirty days you'll do any more than you have in the last sixty.

MR. ATKINSON: I'll tell you exactly what we want to do, your Honor. I have spent hours upon hours and almost bankrupted my law practice in trying to prepare for this case by the twenty-fourth. I have come to the conclusion within the last five or six days that it's humanly impossible to be prepared to give this man a fair defense on the twenty-fourth of this month.

THE COURT: Why?

MR. ATKINSON: Because I have not been able to go through the discovery, much of it, more than one time. I have not had the time to do it. I have read the transcript. I have gone through the discovery as it has come in. Discovery was available but not produced to the Defense by the prosecution, much of it —

THE COURT: See, he's not —

MR. ATKINSON: — until the last week.

THE COURT: He's not dissatisfied with you. He thinks you're doing a wonderful job. And you haven't done a damn thing apparently. He's just unhappy with Kenny.

MR. ATKINSON: Your Honor, the discovery has not been fully disseminated. The witnesses have not been — have not had opportunity to develop who all of the witnesses will be or to interview the witnesses that will be called. And this defense needs more time to be developed.

THE COURT: If I have to give you a continuance, I'm going to find you ill prepared and relieve you from the case and you will not try it at all. I'll get somebody else to do it. That means you don't take care of your practice apparently.

MR. ATKINSON: I understand, your Honor. But this man deserves a fair trial.

THE COURT: Well, why haven't you been busy about it, Mr. Atkinson?

MR. ATKINSON: I have been very busy, your Honor.

THE COURT: Not very busy. If you can't read a transcript and get prepared in sixty days, then you've got no business practicing this kind of law.

MR. ATKINSON: With all due respect, your Honor, we're not trying the last trial. We're trying a new trial —

THE COURT: I know.

MR. ATKINSON: — and we're not trying that transcript again.

THE COURT: That's why it's not important for you to have read it. If there's not anything in there, what difference does it make if you haven't read it but one time?

MR. ATKINSON: I have read the transcript.

THE COURT: One time. And there's nothing in there. You're trying a new case. So. You should have found that out early on.

MR. ATKINSON: I never represented to the Court that there was nothing in the transcript. There's very valuable information in the transcript.

THE COURT: You just told me you're not trying that other case, you're trying a new case.

MR. ATKINSON: That's absolutely correct.

THE COURT: Mr. Hartenstein?

MR. HARTENSTEIN: Yes, your Honor.

THE COURT: Can you represent this man?

MR. HARTENSTEIN: No way I can represent him by Monday.

THE COURT: I'm not asking about Monday.

MR. HARTENSTEIN: If the Court sees to — wants to appoint me, I will accept the appointment.

THE COURT: But, now, when will you try it?

MR. HARTENSTEIN: All I have seen of this case thus far is a sixteen volume transcript and several huge boxes of paper.

THE COURT: Well, you can rest assured that's not going to help you because they're read it and they don't know what they's talking about —

MR. HARTENSTEIN: I may differ.

THE COURT: — and they're not trying that other case. Huh?

MR. HARTENSTEIN: I may differ with them.

THE COURT: Well, I'm sure you will.

MR. HARTENSTEIN: I don't want to —

THE COURT: Mr. Foster, I don't really see much sense in pursuing this when we've got two lawyers admitting negligence on their part and dereliction of duty. I don't see any sense in pursuing this. Do you?

MR. FOSTER: Pursuing the?

THE COURT: Trial.

MR. FOSTER: Your Honor, it's — It's our — We do resist the motion for a continuance, your Honor.

THE COURT: I understand. But, you know, if you've got two lawyers who admit their negligence and haven't prepared this case and can't represent this man, we're just kidding ourselves. It's going to be expensive for both of them. But, Ray, I tell you what I'll do. I'll recess this case

until you can go back to your office and get your calendar back over here. And, if you will accept it, do you want some help?

MR. HARTENSTEIN: Certainly.

THE COURT: Who?

MR. HARTENSTEIN: Can I think about that while I —

THE COURT: Sure. What time is it? Can you be back by noon?

MR. HARTENSTEIN: Yes, sir.

THE COURT: Let's recess until 11:45. Gentlemen, you all stay in the courtroom. And, Mr. Clements, let me ask you this. Are you satisfied with Mr. Hartenstein?

THE DEFENDANT: Yes, sir.

THE COURT: There ain't going to be no more, "I'm not satisfied."

THE DEFENDANT: No, sir.

THE COURT: And your defense is, "I didn't do it; somebody else did."

THE DEFENDANT: Yes, sir.

THE COURT: All right. We're in recess until 11:45.

(THEREUPON, court was in recess for approximately thirty minutes; then the following proceedings occurred:)

THE COURT: All right. Mr. Atkinson, the motion before the Court is for a continuance. I've asked Mr. Hartenstein if he can accept an appointment. Mr. Hartenstein, can you?

MR. HARTENSTEIN: Yes, your Honor.

THE COURT: And you want Mr. Blake Hendrix to help you?

MR. HARTENSTEIN: Yes, your Honor.

THE COURT: You're relieved, Mr. Atkinson. Do you

want to be relieved?

MR. ATKINSON: No, your Honor.

THE COURT: Do you want to be relieved?

MR. SUGGS: Yes, I do.

THE COURT: Ken Suggs and Richard Atkinson relieved, held to be negligent and failing to prepare case and get ready for trial, and held in contempt of Court and assessed a fine of a thousand dollars each to be paid within ten days unless a Notice of Intent to Appeal is filed. Ray Hartenstein and Blake Hendrix are appointed. Mr. Clements, have you got any problem with what I'm doing?

THE DEFENDANT: No, sir. I was just hoping that Mr. Atkinson can stay.

THE COURT: Well, I wish you'd make up your mind. You weren't happy with him. Now, you're unhappy [sic] with him.

THE DEFENDANT: I told you earlier I was happy with him.

THE COURT: Well, he hasn't done anything for you.

THE DEFENDANT: Well, I see that he has, your Honor.

THE COURT: Well, are you ready to go to trial with him Monday?

THE DEFENDANT: That's up to the attorneys.

THE COURT: Now, wait a minute. Now wait a minute. I'm talking to you. If you're happy with him, I'll let him stay on the case and we'll go to trial Monday.

(THEREUPON, Counsel for the Defense conferred privately with the Defendant; then the following proceedings occurred:)

THE DEFENDANT: No, sir.

THE COURT: No, sir, what?

THE DEFENDANT: I'm not happy with him.

THE COURT: Well, he just told you that.

THE DEFENDANT: I'm not ready to go to trial.

THE COURT: I know. You're not ever going to get ready to go to trial. But that may not be an election that you have. Are you happy with Mr. Atkinson and you want to go to trial Monday?

THE DEFENDANT: No, sir, I don't.

THE COURT: All right. When's the trial date, Mr. Prosecutor?

MR. FOSTER: Your Honor, I believe that September 23rd the courtroom would be available in Conway.

THE COURT: September 23rd?

MR. FOSTER: I believe that's correct, your Honor.

THE COURT: At nine a.m.

MR. FOSTER: Yes, sir.

THE COURT: Ray and Mr. Prosecutor, after you all have had some time, let me know when you want a hearing, an omnibus hearing, and get with Terry and I'll set it any time you all want it. I'm at your mercy. And I'll stay as late as you need. And I want this man represented and I don't want to hear him complaining and fussing anymore, although I'm not really upset with him. If I had two lawyers that hadn't done anything about it, I'd be upset, too. And they're relieved and have no more responsibility in it. And I'll expect a check from them. You all let me know what you want to do.

MR. FOSTER: We'll do so, your Honor.

THE COURT: All right. Thank you, sir. Court's adjourned.

A defendant's right to counsel of choice is grounded in the sixth amendment to the United States Constitution, and is also granted by Art. 2 Section 10 of the Arkansas Constitution. Applying this principal to court-appointed, as well as privately retained, attorneys we have held, however, that the right to

counsel of one's choosing is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Burns* v. *State*, 300 Ark. 469, 780 S.W.2d 23 (1989). An example of such purposeful frustration occurs when a defendant requests new counsel merely in order to obtain a continuance of trial. *See Bryant* v. *State*, 304 Ark. 514, 803 S.W.2d 546 (1991). Certainly this was not the situation here, and, in fact, both Clements and Mr. Atkinson clearly expressed their desire for Mr. Atkinson to remain on the case. Clements only relinquished that request when the trial court literally forced him to choose between accepting new counsel, to whom he was opposed, in order to obtain the continuance, or retaining Mr. Atkinson, as he wished and immediately proceeding to trial unprepared.

This case thus presents the unique situation where a trial court removes an attorney from the case against the wishes of both the defendant and the attorney. Some courts have found this to be a violation of the accused's sixth amendment right to counsel, and we find their logic compelling.

In *Harling* v. *United States*, 387 A.2d 1101 (1978), the trial court removed the defendant's appointed attorney, over the protestations of both client and attorney, because the attorney stated that he could not be an effective advocate without access to the names of certain eyewitnesses. The trial court abruptly cut him off and construed the attorney's statement as an attempt at making a record for ineffectiveness of counsel when, in reality, the attorney was simply trying to convince the court to grant his motion for discovery.

In reversing, the District of Columbia Court of Appeals recognized that an indigent does not have an unqualified right to counsel of his choice, and that substitution of counsel rests within the discretion of the trial court. The court concluded, however, that:

> '[O]nce counsel has been chosen, whether by the court or the accused, the accused is entitled to the assistance of *that* counsel at trial.' The right to assistance of chosen counsel is not absolute, however. A trial judge may 'in the interest of justice' substitute one counsel for another. Gross incompetence or physical incapacity of counsel, or contumacious

conduct that cannot be cured by a citation for contempt may justify the court's removal of an attorney, even over the defendant's objection.

*Harling*, 387 A.2d at 1105 (citations omitted). The appellate court found that there was no justifiable basis for the trial court's removal of the appointed attorney:

Counsel's efforts were within the bounds of reasonable advocacy. His conduct appears neither contemptuous, insolent, nor unprofessional. The court's response to counsel's persistence was both intemperate and unwise. Mere disagreement as to the conduct of the defense certainly is not sufficient to permit the removal of any attorney.

*Id.* Likewise, we find no support in the record for the trial court's discharge of Mr. Atkinson.

Mr. Atkinson was appointed to the case only two months prior to the trial date. The case has a complex history, involving two other alleged accomplices. *See Leach* v. *State*, 303 Ark. 309, 796 S.W.2d 837 (1990); *McMillen* v. *State*, 302 Ark. 601, 792 S.W.2d 315 (1990). Mr. Atkinson was not only attempting to read and digest what must have constituted reams of documentation compiled during the first trial, but was conducting his own investigation as he is required to do. *See David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988). The record reflects that he and Mr. Suggs had already filed numerous motions before they were released from their representation of Clements. Even assuming Mr. Atkinson to have been negligent, as the trial court charged, there was certainly no evidence of gross malfeasance, physical incapacity, or belligerent conduct, such as would justify his removal.

We have held that once competent counsel is obtained, any request for a change in counsel must be considered in the context of the public's interest in the prompt dispensation of justice. *Leggins* v. *State*, 271 Ark. 616, 609 S.W.2d 76 (1980). Certainly, the same consideration should apply to a trial court's removal of appointed counsel. We find the holding of the Supreme Court of California particularly instructive:

[W]e must consider whether a court-appointed counsel may be dismissed, over the defendant's objection, in

circumstances in which a retained counsel could not be removed.

A superficial response is that the defendant does not pay his fee, and hence has no ground to complain as long as the attorney currently handling his case is competent. But the attorney-client relationship is not that elementary; it involves not only just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service. It follows that once counsel is appointed to represent an indigent defendant the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused.

*Smith* v. *Superior Court of Los Angeles*, 68 Cal. Rptr. 1, 440 P.2d 65 (1968). *Accord, McKinnon* v. *State*, 526 P.2d 18 (Alaska 1974); *People* v. *Davis*, 114 Ill. App. 3d 537, 449 N.E.2d 237 (1983); *Matter of Welfare of M.R.S.*, 400 N.W.2d 147 (Minn. Ct. App. 1987). Recognizing that each case must be examined on its own set of facts, we hold that where, as here, a trial court terminates the representation of an attorney, either private or appointed, over the defendant's objection and under circumstances which do not justify the lawyer's removal and which are not necessary for the efficient administration of justice, a violation of the accused's right to particular counsel occurs.

■ Here, the trial court did not simply grant or deny Mr. Atkinson's motion for continuance as it should have, rather it placed Clements in a catch-22 position that compelled him to accept new, unrequested counsel in order to gain a continuance or proceed immediately to trial against the advice of his previously assigned attorney, with whom he had developed a working

relationship. In essence, the trial court attempted to barter with Clements for a continuance. This action on the part of the trial court is arbitrary and unacceptable. Granted, the public has an interest in the prompt disposition of justice, *Leggins* v. *State*, *supra*, however, it must be served in an even-handed manner. . .fair to the state, yet fair to the defendant. Under the circumstances of this case, Clements is entitled to retain Mr. Atkinson as his counsel.

This case is reversed and remanded with instructions to the trial court to proceed consistent with this opinion.