# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

## STATE OF TENNESSEE v. THOMAS DEE HUSKEY

### Extraordinary Appeal from the Criminal Court for Knox County
No. 51903     Richard M. Baumgartner, Judge

---

### No. E2002-00030-CCA-R10-CD
### March 26, 2002

---

The defendant, Thomas Dee Huskey, brings this extraordinary appeal in which he challenges the order of the Knox County Criminal Court removing his lead counsel of record for his retrial on four counts of first degree murder. The defendant asserts that the trial court's action is an infringement on his Sixth Amendment right to counsel. We conclude that the trial court's order violated the defendant's right to counsel and exceeded its discretion. We vacate the trial court's order and remand the case for further proceedings.

**Tenn. R. App. P. 10; Order of the Criminal Court is Vacated; Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. GARY R. WADE, P.J., filed a dissenting opinion.

Herbert S. Moncier and Gregory P. Isaacs, Knoxville, Tennessee, for the appellant, Thomas Dee Huskey.

Paul G. Summers, Attorney General and Reporter; Gill Robert Geldreich, Assistant Attorney General; Randall E. Nichols, District Attorney General, for the appellee, State of Tennessee.

W. Thomas Dillard, Knoxville, Tennessee, and Martin S. Pinales, Cincinnati, Ohio, for the Amicus Curiae, National Association of Criminal Defense Lawyers.

Paula R. Voss and Richard L. Gaines, Knoxville, Tennessee, for the Amicus Curiae, Tennessee Association of Criminal Defense Lawyers.

Randall E. Reagan, Knoxville, Tennessee, for the Amicus Curiae, Knoxville Defense Lawyers Association.

**OPINION**

We granted the defendant's application for an extraordinary appeal pursuant to Rule 10, T.R.A.P., to consider whether the trial court erred in discharging appointed counsel from further representation of the defendant based on its finding that counsel's approach to litigation constituted "an abuse of the legitimate functioning of the legal system." The precise issue is a novel one in Tennessee. However, given the nature of the pending litigation and our view of the nature and consequences of the trial court's error, we believe that pretrial review is necessary and will prevent needless waste of time, costs and resources that would occur with post-trial review.

**FACTS AND PROCEDURAL HISTORY**

In June 1993, the defendant was indicted in the Knox County Criminal Court in case number 51903 for four counts of first degree murder. The defendant was also indicted and convicted in case numbers 49828, 49829, 49830, and 50090 (hereinafter, generally referred to as the "Hanshaw" and the "Consolidated" rape cases) for multiple rapes, robberies, and kidnappings committed against several victims. Mr. Moncier's representation of the defendant began with his appointment in these cases, which are presently pending on appeal. In the murder case, the prosecution filed notice of its intent to seek the death penalty for each offense. Attorneys Herbert S. Moncier and Gregory P. Isaacs were appointed to represent the defendant as lead counsel and co-counsel, respectively.

The murder trial began in January 1999. After deliberating for over four days, the jury was unable to reach a unanimous decision and was discharged pursuant to a mistrial. At the conclusion of the proceedings, this court granted the defendant an interlocutory appeal on the question of whether constitutional protections against double jeopardy prohibited him from being retried on the capital murder charges. We held that double jeopardy did not bar the defendant's retrial and remanded the case to the trial court for further proceedings. See State v. Thomas Dee Huskey, No. E1999-00524-CCA-R9-CD, Knox County (Tenn. Crim. App. Aug. 13, 2001), app. denied (Tenn. Dec. 10, 2001) (for publication). Presently, the defendant awaits retrial in Knox County Criminal Court on the first degree murder charges, and the state has again filed a notice of its intent to seek the death penalty.

On January 7, 2002, the trial court, without a hearing, entered sua sponte an order removing Mr. Moncier from further representation of the defendant on his retrial for capital murder. The trial court's order was apparently prompted by the filing of ten separate pretrial motions by Mr. Moncier on December 21, 2001, the order noting "motions for discovery, motion for Brady disclosures, renewed motion for a Bill of Particulars, motions to dismiss the Presentment, motions for change of venue, etc. . . ." A reading of the entire order, however, suggests that the filing of these particular motions was simply the "straw that broke the camel's back."

In its order, the trial court stated its belief that Mr. Moncier's "approach to litigation" constitutes "an abuse of the legitimate functioning of the legal system." The court considered it had

the obligation to end the abuse pursuant to its authority under Rule 13, Tenn. S. Ct. R., to appoint legal counsel to indigent defendants in criminal cases and to monitor generally and approve the payment of reasonable fee and expense requests by appointed counsel, subject to final approval by the supreme court. The court conceded that removing Mr. Moncier due to his abusive approach to litigation was "wholly distinct" from more common circumstances in which a trial court has removed counsel from an ongoing case, noting that the removal of counsel is more often prompted by a defendant's dissatisfaction with his attorney or counsel's request to withdraw due to a serious conflict or disability. The trial court concluded that this case nevertheless presented "compelling and overwhelming" reasons for removing Mr. Moncier.

The court cited the "countless motion hearings requiring several hundred hours of courtroom time" in this case; the nearly 30,000 pages of trial transcript; and the thousands of additional pages of pleadings, "the overwhelming majority" of which were generated by Mr. Moncier. In addition, the court found that a review of Mr. Moncier's appellate practice with respect to the defendant's cases "provides further insight." The court stated that Mr. Moncier had filed "at least 24 separate appeals" to this court or our supreme court, only two of which were appeals as of right, and noted that in "each and every one" of the remaining cases where the defendant sought appellate relief, the applications were dismissed, relief was denied, or there were rulings adverse to the defendant's position. The trial court noted it had previously addressed Mr. Moncier's motion practice, as quoted in its May 1999 order in which it reviewed and disallowed a portion of Mr. Moncier's claimed legal fees following the conclusion of the first murder trial:

> As has previously been noted by this court, counsel for Mr. Huskey have filed an unprecedented number of pleadings in this multi-faceted case. The overwhelming majority of the pleadings (over ninety-five percent) have been generated by Mr. Moncier. In this court's judgment many of those pleadings were duplicitous, repetitive and unnecessary to appropriately represent Mr. Huskey. Further, many of the pleadings were unnecessarily lengthy and contained needless surplusage. Examples of such pleadings include the motions for speedy trial, motions for new trial, motions to recuse the court, and motions to recuse the prosecutor, where the original motion is amended numerous times with the same or similar issues raised in a slightly different light. Other examples include many of the pleadings filed on the issue of mental examination of the defendant where, faced with definitive rulings by the trial and appellate courts, counsel continued to raise previously ruled upon issues. Yet other examples include counsel's repeated request to apply a heightened standard of due process or for discovery of exculpatory evidence when all of those issues were exhaustively and extensively ruled upon by the court.

Upon the filing of the ten aforementioned pretrial motions by Mr. Moncier, the trial court concluded that "there is no indication that anything has changed." The trial court observed:

> This court is of the opinion that there is no rational explanation for or reasonable justification of this approach to litigation, that is, where the same or substantially identical issues are raised in multiple pleadings; or issues for which previous definitive rulings already exist are raised again; or where the same relief is sought time and again where it has been previously granted. This is plainly litigation for the sake of litigation.
>
> If counsel were retained instead of appointed, and being paid an hourly fee for the representation, no rational client would authorize [his or her] lawyer to seek relief that had already been granted, or allow [the lawyer] to again raise an issue that has been the subject of a clear recent ruling. Further, in reviewing all the other capital cases handled by this court since 1992, no other lawyer, which includes the very best of those who practice in East Tennessee, has approached litigation as Mr. Moncier has in these cases. While many of the same issues may be raised in other capital cases, they are raised, litigated, and decided on one, rather than multiple occasions.
>
> In this case the state and [its] taxpayers [are] obligated to pay for the reasonable competent representation of Mr. Huskey. This court has absolutely no hesitation in providing Mr. Huskey with the best legal services available consistent with the system designed by our Supreme Court to provide those services. When that system is abused, however, as we believe it has been abused here, so as to pervert [its] effective implementation, we believe it is the obligation of the court to take appropriate action to eliminate that abuse. In this case we believe that appropriate action is to remove Mr. Moncier from further representation of Mr. Huskey in the four capital murder counts that have been remanded for re-trial.

As a result, the court appointed Mr. Isaacs as the defendant's new lead counsel and solicited suggestions for the appointment of co-counsel. On that same day, the defendant filed an application for extraordinary appeal seeking review of the order discharging Mr. Moncier as the defendant's counsel.

Concluding that the removal of counsel "so far departed from the accepted and usual course of judicial proceedings" that immediate review was required, we granted the defendant's Rule 10 application pursuant to Rule 10, T.R.A.P. In the interest of expediting this matter pursuant to Rules

-4-

2 and 10(d), T.R.A.P., we resolve the appeal on the basis of the application and response before us, including the brief of amici curiae, and without further briefing or argument by the parties.

## I.  RIGHT TO COUNSEL

We begin with the guarantee of the defendant's right to counsel, grounded in the Sixth Amendment of the United States Constitution and also granted by article I, section 9, of the Tennessee Constitution.   The Sixth Amendment requires that "'the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense'" in state criminal prosecutions.  Gideon v. Wainwright, 372 U.S. 335, 339, 345, 83 S. Ct. 792, 794, 797 (1963) (quoting U.S. Const. amend. VI).  The right to the assistance of counsel at trial, however, does not guarantee that a criminal defendant will be represented by a particular attorney.  While a criminal defendant who desires and is financially able to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice," Powell v. Alabama, 287 U.S. 45, 53, 53 S. Ct. 55, 58 (1932), an indigent defendant has no absolute right to counsel of his choice.  See United States v. Davis, 604 F.2d 474, 478  (7th Cir. 1978).  Moreover, the Sixth Amendment's protection includes no guarantee of the right to a meaningful relationship between an accused and his counsel, whether counsel be appointed or retained.  Morris v. Slappy, 461 U.S. 1, 14, 103 S. Ct. 1610, 1617 (1983); State v. Carruthers, 35 S.W.3d 516, 546 (Tenn. 2000).  The right to be represented by counsel of one's choice is qualified and "must be balanced against the requirements of the fair and proper administration of justice." United States v. Micke, 859 F.2d 473, 480 (7th Cir. 1988).

The trial court's action in matters regarding the appointment and relief of counsel will not be set aside on appeal unless an abuse of discretion is shown. State v. Rubio, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987).   At the same time, in cases "involving the life or liberty of the citizens, this discretion entrusted to the courts should be carefully and cautiously exercised; and where this court can see that the rights of a party may have been jeopardized by an improper exercise of this judicial discretion it will not hesitate to reverse for that cause."  Kizer v. State, 80 Tenn. 564, 567 (1883); see also State v. Freida Kilburn Hayes, No. 3, Obion County, slip op. at 6 (Tenn. Crim. App. Nov. 9, 1988) (citing Kizer, 80 Tenn. at 567) ("Because this is a right that belongs to the defendant, any decision by a trial court to restrict the defendant's choice of counsel should be carefully and cautiously considered on appeal.").

In this case, no dispute exists that the defendant is indigent and was therefore entitled to the appointment of trial counsel.  See Tenn. S. Ct. R. 13, § 3(b) (providing that an indigent defendant in a capital case is entitled to the appointment of two attorneys, a "lead counsel" and a "co-counsel" in his defense).  The defendant also acknowledges that an accused is not entitled to the appointment of a particular attorney at the outset of an adversary proceeding.  Rather, he urges that once an attorney-client relationship is established, the trial court cannot arbitrarily interfere with this relationship.  Amici, as well, assert that the right to counsel implicated in this case is the right of the defendant "to continuity of counsel of his choice."

## II.  CONTINUITY OF COUNSEL

We are persuaded by the principles relied upon in the following cases that any meaningful distinction between indigent and non-indigent defendants' right to representation by counsel ends once a valid appointment of counsel has been made.   In Smith v. Superior Court of Los Angeles County, 440 P.2d 65 (Cal. 1968),  the California Supreme Court acknowledged the general principle that an indigent accused may not demand the appointment of counsel of his choice.  The court concluded, however, that, in the face of the defendant's attempt, not to establish or change, but to *preserve* the relationship with his counsel, any attempt to distinguish between appointed and retained counsel was meaningless.  The court stated:

> [W]e must consider whether a court-appointed counsel may be dismissed, over the defendant's objection, in circumstances in which a retained counsel could not be removed. A superficial response is that the defendant does not pay his fee, and hence has no ground to complain as long as the attorney currently handling his case is competent. But the attorney-client relationship is not that elementary: it involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service. It follows that once counsel is appointed to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused.

Id. at 74 (citations omitted).

Citing its  "complete agreement" with these observations in Smith, the Supreme Court of Alaska has declared, "Preservation of the right to proceed with one's chosen counsel is not mere constitutional formalism."   McKinnon v. State, 526 P.2d 18, 22 (Alaska 1974).

> Once counsel has been appointed, and the defendant has reposed his trust and confidence in the attorney assigned to represent him, the trial judge may not, consistent with the United States and Alaska constitutions, rend that relationship by dismissing the originally appointed attorney and then thrusting unfamiliar and unwelcome counsel upon the defendant.  The attorney-client relationship, once

established, is inviolate, and may not be severed or otherwise intruded upon.

Id. at 22-23 (citing Smith, 440 P.2d at 75). As these decisions reflect, "once counsel has been chosen, whether by the court or the accused, the accused is entitled to the assistance of that counsel at trial." English v. State, 259 A.2d 822, 826 (Md. Ct. Spec. App. 1969) (emphasis in original).

Thus, we will view the defendant's right to lead counsel's continuing representation through appointment in the same manner as if he were retained by the defendant. With this in mind, we also do not believe that the existence of co-counsel lessens the defendant's right to lead counsel's assistance.

## III. REMOVAL OF COUNSEL

The issue now relates to whether and under what circumstances the trial court may remove counsel, over the objection of counsel and the defendant, once adversary proceedings have begun. The defendant asserts that counsel cannot be discharged based on the trial court's "predilections, sensitivities, or displeasure with counsel's representation of Mr. Huskey unless the Court finds that counsel is not providing the accused the effective assistance of counsel." The state agrees that the relationship may not be arbitrarily ended by the trial court but asserts that the trial court in this case properly exercised its discretion to remove counsel.

Some circumstances demand the removal or disqualification of counsel in the interest of justice, notwithstanding the implication of the defendant's right to counsel. For example, "an accused is entitled to zealous representation by an attorney unfettered by a conflicting interest. To establish a denial of the sixth amendment right to counsel, it is sufficient to show that an actual conflict existed." State v. Thompson, 768 S.W.2d 239, 245 (Tenn. 1989) (citing Cuyler v. Sullivan, 446 U.S. 335, 345-50, 100 S. Ct. 1708, 1716-19 (1980)). Also, federal courts "must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat v. United States, 486 U.S. 153, 164, 108 S. Ct. 1692, 1700 (1988). Further, "[a]ll will agree that if the defendant's attorney exhibits objective evidence of physical incapacity to proceed with a meaningful defense of his client . . . the court need not sit idly by; it should inquire into the matter on its own motion, and if necessary relieve the affected counsel and order a substitution." Smith, 440 P.2d at 73; see also Tenn. S. Ct. R. 8, DR 2-110(B)(3) (providing for the mandatory withdrawal of an attorney whose "mental or physical condition renders it unreasonably difficult for the lawyer to carry out the employment effectively").

The more difficult question before us is whether the trial court may remove defense counsel based on its finding that counsel's approach to litigation is an abuse of the legal system. A review of decisions from other jurisdictions reflects that, in the context of the right of a defendant to continued representation by a particular attorney, absent the consent of the defendant or counsel, the removal of counsel on the trial court's own motion is allowed on a very limited basis.

In Smith, described by at least one court as the "lead case" on the subject, People v. Johnson, 547 N.W.2d 65, 69 (Mich. Ct. App. 1996), the California Supreme Court decided the "unprecedented issue of whether a trial judge has or should have the power to remove a court-appointed defense attorney, over the objections of both the attorney and the defendant, on the ground of the judge's subjective opinion that the attorney is 'incompetent'" to proceed. Smith, 440 P.2d at 66. The court acknowledged the trial court's duty to ensure that the defendant is provided the effective assistance of counsel. "But in discharging that duty the judge must be on his guard neither to infringe upon the defendant's right to counsel of his choice, nor to compromise the independence of the bar." Id. at 72. The court determined that the "inhibition imposed on a defense attorney by [the threat of removal] constitutes a serious and unwarranted impairment of his client's right to counsel." Id. at 74. It stated:

> [T]he constitutional guarantee of the defendant's right to counsel requires that his advocate, whether retained or appointed, be free in all cases of the threat that he may be summarily relieved as "incompetent" by the very trial judge he is duty-bound to attempt to convince of the rightness of his client's cause. Here . . . "the recognition of such an authority would involve the surrender of a substantial amount of the independence of the bar, and, in many instances would deprive litigants of a fair hearing."

Id. at 75 (quoting Gallagher v. Municipal Court of Los Angeles, 192 P.2d 905, 914 (Cal. 1948)). The court concluded that when removal is permitted at all, it requires objective evidence of counsel's physical incapacity to continue or serious misconduct by counsel which cannot be addressed through other reasonable measures. Id. at 72-74.

As summarized in an earlier decision, California courts have emphasized that

> the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources – and that that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.

People v. Crovedi, 417 P.2d 868, 874 (Cal. 1966). In the present case, the state suggests that such language denotes that California has adopted a "broader standard" than other jurisdictions that have considered the involuntary removal of counsel. Based on our review of relevant cases, however, we are not convinced that this is the case. California decisions continue to reflect that the trial court's discretion to remove counsel absent the consent of the defendant and his counsel is "severely limited," and that "[c]ourts should seek an accommodation reasonable under the facts of the particular case." People v. Lucev, 233 Cal. Rptr. 222, 225 (Cal. Ct. App. 1986) (citing People v.

Courts, 693 P.2d 778, 790 (Cal. 1985)).  Decisions of the California courts as well as those of other jurisdictions similarly illustrate the balancing of interests that a trial court must undertake when determining whether the removal of counsel is justified under the circumstances of a particular case to the end that "a reasonable accommodation of seemingly conflicting values shall thereby be achieved."  Crovedi, 417 P.2d at 874.

In Harling v. United States, 387 A.2d 1101 (D.C. 1978), the District of Columbia Court of Appeals similarly determined that while the right to assistance of chosen counsel is not absolute, a court may not arbitrarily infringe upon it.  The court stated that "[g]ross incompetence or physical incapacity of counsel, or contumacious conduct that cannot be cured by a citation for contempt may justify the court's removal of an attorney, even over the defendant's objection." Id. at 1105.  However, "[m]ere disagreement as to the conduct of the defense certainly is not sufficient to permit the removal of any attorney."  Id.

Finally, the Texas Court of Criminal Appeals has rejected the authority of a trial court to remove counsel based on its apparent dislike for counsel's conduct of the case.  Stearnes v. Clinton, 780 S.W.2d 216 (Tex. Crim. App. 1980).  While pointing with approval to the "unquestionable precedential value" of the decisions in Smith and Harling, among others, the Stearnes court noted, however, that the case "reveals a more serious misuse of judicial power" than those cited because the trial court "chose not to remove trial counsel for his incompetence but for his competence." Id. at 223.

Recognizing that the right of a defendant to his chosen counsel is not absolute, courts in other cases have also held that the trial court's removal of an appointed counsel from an ongoing representation of a defendant, over the objection of the defendant and his attorney, was beyond its discretion.  See, e.g., Clements v. State, 817 S.W.2d 194 (Ark. 1991) (holding that the trial court's termination of appointed counsel, over the objection of the defendant and counsel, was an arbitrary action and violated the defendant's right to counsel when defendant was forced to choose between accepting new counsel and being granted a continuance to prepare for trial or retaining original counsel and being forced to proceed immediately to trial while unprepared); Johnson, 547 N.W.2d at 69 (holding that the trial court improperly relieved appointed counsel based on counsel's challenge to the court's "interim investigation orders" and thereby violated defendant's Sixth Amendment right to counsel); Welfare of M.R.S., 400 N.W.2d 147 (Minn. Ct. App. 1987) (holding that the trial court's summary dismissal of a juvenile's appointed counsel during appeal and after counsel had moved the court to disqualify itself was arbitrary, a clear abuse of discretion and a violation of the juvenile's right to counsel); McKinnon v. State, 526 P.2d 18 (Alaska 1974) (holding that the removal of the defendant's appointed attorney, over the defendant's protest, on trial court's belief that counsel was inadequately prepared for trial, was not within court's authority and deprived the defendant of his right to counsel of his choice); In re Civ. Contempt Proc. Concerning Richard, 373 N.W.2d 429 (S.D. 1985) (granting extraordinary relief and setting aside order of trial court discharging attorney appointed to represent a grand jury witness after attorney was held in contempt for rejecting an offer of immunity).

# IV. REMOVAL OF COUNSEL AND LESS DRASTIC MEASURES

Returning to the present case, we consider whether the removal of Mr. Moncier was the proper response to the trial court's finding that counsel's motion practice constituted an abuse of the system. As we noted, Mr. Moncier has represented the defendant in the capital murder case before, during, and after the first trial. In each of the thirty-one major felony offenses with which the defendant was originally charged, the defendant has been represented by Mr. Moncier. In the murder case alone, counsel has represented the defendant for nearly ten years. In other words, we are presented with a long-established attorney-client relationship. Moreover, we remain mindful of the fact, and consider it significant, that Mr. Moncier has seen the defendant's cases through three trials with the present trial court presiding. Obviously, the wheels of justice have continued to turn.

We are reluctant for any court to place limits on an attorney's ability to conduct his or her case within the bounds of the obligation to represent the client zealously, but a court may step in when counsel's actions become overzealous. In this regard, convinced of its obligation to end what it viewed as counsel's continuing abuse of the legal system and faced with an approaching trial, the trial court in this case decided that the only remedy in this case was to remove Mr. Moncier. However, we cannot agree. We believe that the trial court improperly chose the most drastic action available. The Tennessee Court of Appeals has recognized that removal of counsel should only occur when no other options exist.

> A trial court has a broad range of options available to insure that its proceedings are fair both in appearance and in fact. Disqualifying an attorney is the most drastic. It invariably causes delay, increases costs, and deprives parties of counsel of their choice. Courts should, therefore, disqualify counsel with considerable reluctance and only when no other practical alternative exists.

In re: Ellis, 822 S.W.2d 602, 605 (Tenn. Ct. App. 1991) (citations omitted). We agree. We conclude that counsel's motion practice in this case demanded from the trial court measured responses in an effort to address perceived problems with counsel before counsel was summarily removed.

This also means that it was inappropriate for the trial court to remove counsel summarily without a hearing or prior warning of the court's concerns. Nothing in the facts suggests it was necessary for the trial court to proceed sua sponte, without a hearing and without an opportunity for the defense to be heard concerning the issue of the right to have lead counsel remain in the case.

We stress, though, that we are not condoning the actions that concerned the trial court. The motion practice in this case indicates a tendency to rush to filing without due consideration or attention to detail by counsel, resulting in unnecessary, multiple amendments being filed. Also, counsel undoubtedly filed numerous motions that, on their face, assert the same claims as other motions. Our review of the pretrial motions filed by Mr. Moncier on December 21, 2001, which appear to have precipitated the trial court's action, reflects that the motions include claims that are

being reasserted without apparent justification on their face for such reassertion. For example, every one of these separate motions asserts, "Because this is a capital murder prosecution, this Court is to apply a heightened standard of due process of law in its consideration of this issue." The record reveals, though, that counsel previously moved the trial court to apply a heightened standard of due process in the case and the court granted the motion. Nevertheless, counsel now reasserts the claim in every pretrial pleading he has filed thus far. Likewise, in each motion counsel "continues to move that [the trial court] disqualify itself prior to any further ruling in this case or on this motion." However, in our order denying interlocutory review on the issue of the disqualification of the trial court, we noted that the trial court reviewed and separately addressed at least eighteen motions in which counsel alleged over one hundred reasons in support of disqualification. We believe that absent some new event that has not been yet alleged, these repeated "motions" to disqualify the trial court reassert a claim upon which the trial court has previously ruled.

As another example, the defense moved the trial court on December 21 to rule on its pending "motion to suppress all evidence obtained as a result of the illegal confinement of defendant on a City of Knoxville municipal offense of soliciting for prostitution." Again, the trial court has already ruled on this issue in both the murder case and the rape cases. As counsel is fully aware, the defendant has challenged the trial court's ruling in his pending appeals of the rape cases. These are but a few examples of the types of pleadings filed by counsel that understandably taxed the trial court's patience.

On the other hand, we recognize the sanctity of the position of defense counsel in criminal cases. It is counsel's duty "to represent the client zealously within the bounds of the law," which encompasses the right to "seek any lawful objective through legally permissible means; and to present for adjudication any lawful claim, issue, or defense." See Tenn. S. Ct. R. 8, EC 7-1. As set forth in the Standards for Criminal Justice of the American Bar Association, the "basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused's counselor and advocate with courage and devotion and to render effective, quality representation." ABA Standards for Criminal Justice Prosecution Function and Defense Function, Std. 4-1.2(b) (3d ed. 1993). Moreover, because "the death penalty differs from other criminal penalties in its finality, defense counsel in a capital case should respond to this difference by making extraordinary efforts on behalf of the accused." Id. at Std. 4-1.2(c). No one would question the fact that Mr. Moncier's efforts on behalf of the defendant have been extraordinary. And the mere fact that his motion filing is prolific or the fact that he has sought interlocutory review on many occasions does not deserve remonstration. Yet, zealous advocacy does not justify repetitive or unnecessarily prolix motions.

While we are not unsympathetic to the challenges that the trial court has faced in presiding over the defendant's cases during the past several years, we view its removal of Mr. Moncier as counsel in response to his motion practice to be unwarranted, because it failed to do the balancing that a trial court must undertake of its "inherent power to control the exercise of the administration of justice," and its obligation to protect the defendant's right to the effective assistance of his counsel of choice. United States v. Gallop, 838 F.2d 105, 107 (4th Cir. 1988). Other options than removal exist. As the Alaska Supreme Court has stated: "The court may censure the obstructive attorney, or

request the bar association to take disciplinary action.  Or the court may assess a fine or impose a term of imprisonment under its contempt power." McKinnon, 526 P.2d at 23.  The court believed that "these methods . . . [are] likely to prove substantially more efficacious than the summary removal of counsel, which, in the final analysis, only penalizes the defendant." Id. at 24.  These are not the only options available to the trial court.  As the trial court has previously done, it can reject counsel's claims for compensation relative to inappropriate time spent – or wasted – on unnecessary matters.  In this respect, co-counsel's obligations regarding pleadings are the same as lead counsel's, and he, too, may be held accountable for his approval of them.

We also note that motions raising issues upon which the court has already ruled are subject to summary denial without further hearing.  Such is true even though the new motion mentions some additional nuance or fact, if the trial court concludes that the new allegation is inconsequential.  Moreover, the trial court can require counsel who is filing repetitive motions to provide in the pleading the factual and legal basis that justify the reassertion of the claim, the date(s) of previous similar motion(s), and the date(s) and relevant ruling(s) of the court.  Such information would permit the trial court to assess efficiently whether a particular filing should be denied as previously determined.

We do not direct the trial court to any particular remedy in this case, but we conclude that the more reasoned approach is for the trial court to exhaust other possible remedies before resorting to the removal of counsel.  As has been aptly stated, "the involuntary removal of any attorney is a severe limitation on a defendant's right to counsel and may be justified, if at all, only in the most flagrant circumstances of attorney misconduct or incompetence when all other judicial controls have failed." Cannon v. Comm'n on Judicial Qualifications, 537 P.2d 898, 911 (Cal. 1975).

**CONCLUSION**

Based on all of the foregoing considerations, we hold that the trial court's removal of lead counsel in this case based on the court's finding of an abusive approach to litigation by counsel exceeded its discretion and violated the defendant's right to counsel.  We vacate the trial court's order removing Mr. Moncier as the defendant's lead counsel in this case and remand the case for further proceedings.

_____
JOSEPH M. TIPTON, JUDGE

-12-