IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 28, 2003 Session

## STATE OF TENNESSEE v. DANIEL ANDREW DECKER

**Extraordinary Appeal from the Criminal Court for Hamilton County**
**No. 239147     Rebecca Stern, Judge**

**No. E2003-00922-CCA-R10-CD**
**March 25, 2004**

The defendant, Daniel Andrew Decker, appeals the trial court's order removing Assistant District Public Defender Karla Gothard as his counsel. Because the trial court did not abuse its discretionary authority, the judgment is affirmed.

**Tenn. R. App. P. 10; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. JOSEPH M. TIPTON, J., filed a dissenting opinion.

Ardena J. Garth, District Public Defender, and Karla G. Gothard, Assistant District Public Defender, for the appellant, Daniel Andrew Decker.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Barry Steelman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In August of 2001, the sixteen-year-old defendant was charged in the Hamilton County Juvenile Court with the murder of his grandmother, Judith Decker. The Office of the District Public Defender was appointed to represent the defendant. Assistant District Public Defender Michael Acuff represented the defendant at the transfer hearing in November of 2001, wherein the defendant was ordered to be tried as an adult. In January of 2002, the defendant was indicted on one count of first degree premeditated murder. The District Public Defender's Office was again appointed to represent the defendant. In February of 2002, Assistant District Public Defenders Michael Acuff and Karla Gothard were assigned to the case.

The case was originally set for trial on September 10, 2002. After the trial date was postponed, the state filed a notice seeking the punishment of life without parole. A new trial date of March 18, 2003, was scheduled and in late November of 2002, the trial court granted the defendant's ex parte request for expert services. The order was approved by our supreme court in

early December of 2002. On February 14, 2003, Ms. Gothard filed a motion for continuance contending that she needed time to assume the role of lead counsel because Acuff, whom she described as "lead counsel," had been called into active military duty. She also claimed that the mitigation expert she had employed needed an additional six or seven months to prepare for trial. At the hearing on the motion conducted three days after its filing, Ms. Gothard reiterated the concerns addressed in the motion. She also cited her own busy schedule as a reason for the continuance.

The state opposed the motion, arguing that Ms. Gothard had played an important role in the defense team from at least June of 2002, when both she and Acuff examined the case file at the office of the District Attorney. At that time, according to Assistant District Attorney Barry Steelman, Ms. Gothard discussed possible strategy and rebuffed the offer by the state to negotiate a plea agreement. Steelman also contended that Ms. Gothard had taken the lead at each of the defendant's pretrial hearings and that Acuff had rarely been present at the hearings. Steelman then asked that the trial judge inquire of the mitigation expert in open court why he could not be prepared within thirty days. When the trial judge asked Ms. Gothard to identify the expert, she responded, "I don't have to tell you who it is." Steelman then inquired whether Dr. Pam Auble was the defense expert and pointed out that Dr. Auble, who was scheduled to appear in another case in that court a week later, could be available to testify as to why she could not be prepared for another six months.

The trial judge ruled that a continuance of six months was not warranted but agreed to grant "a little more time," to which Ms. Gothard responded, "[O]ne of the reasons I'm asking for late October, early November, quite frankly, Judge, [is] because of my trial schedule." The trial judge then suggested that Ms. Gothard either seek assistance from other attorneys in her office or ask another attorney to take over. Ms. Gothard rejected a trial date in August 2003, citing the fact that she was trying a death penalty case in July and another in September. When the trial judge again suggested that another attorney in the Public Defender's Office with a more flexible schedule take over the representation, Ms. Gothard resisted, complaining that death penalty cases take "a lot of the resources of our office." At that point, the trial judge observed that "[i]f [the Public Defender's Office] is so busy with death penalty cases you can't schedule something by August, then somebody else is just going to have to take over."

Ms. Gothard also rejected proposed trial dates in late July and early September, again citing her busy trial schedule. She also contended that another lawyer, whether from her office or not, could not be prepared to try the case in July. The motion to continue was adjourned until the following Monday and the trial judge indicated that she would contact other lawyers in an attempt to find someone who could prepare for trial on July 22, 2003. In addition, the trial judge stated, "If Ms. Auble is one of your experts and is in fact going to be here next Monday, it might be something we need to take up while she is here."

At the hearing conducted on the following Monday, the trial judge confirmed on the record that Ms. Gothard had informed her in chambers that she had failed to contact her expert about the case within the seven days prior to the hearing. Ms. Gothard requested that the hearing be postponed

until the afternoon so that she might have an opportunity to contact her expert. The trial judge agreed and later that day, Ms. Gothard returned and presented the trial judge with an affidavit from the expert explaining the rationale for the requested continuance. At the hearing, the trial judge ruled that the affidavit was insufficient to warrant a delay and ordered that the expert appear in court to answer questions regarding the need for a continuance. Ms. Gothard refused, contending that the expert was not required to testify regarding his trial preparation in the presence of the state. The trial court declined a request to conduct an ex parte hearing, but assured Ms. Gothard that it would not permit any questioning that might require the expert to reveal privileged information or trial strategy. At that point, Ms. Gothard insisted that she be permitted an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure on the issue of whether the defense expert was required to appear at an adversarial rather than ex parte proceeding to testify regarding the need for a continuance.

The trial judge consented to the request for an appeal under Rule 9 and directed Ms. Gothard to prepare an order granting the interlocutory appeal by the following Monday. Ms. Gothard agreed to prepare the order and present it to the prosecutor's office no later than the following Thursday. On Monday, the matter was rescheduled to Tuesday, at which time Ms. Gothard announced that she had not prepared the Rule 9 order because the consent to the appeal had postponed the July 22 trial date and, in effect, served to grant her motion to continue. She stated that because the denial of her motion to continue the trial date was the basis for the Rule 9, she had nothing to appeal once the trial date was postponed. The trial judge reminded her that the only question to be presented in the Rule 9 was whether the defense expert was required to testify in open court as to the reasons for the delay or whether the inquiry should be made in an ex parte hearing. The following exchange then occurred:

> THE COURT: I said your witness had to be here and I gave you one week to file an interlocutory appeal . . . I was going to agree with you that we needed a ruling on that. None of that has even been done.
>
> I am [therefore] taking the Public Defender off of this and appointing somebody who can follow my orders and who can have things done when I tell them to have them done.
>
>         *                *               *
>
> This has now gone on two whole more weeks . . . I asked your expert to be here. Okay. Your expert didn't come in, you bring in an affidavit. When I said bring your expert, have him available. No, he wasn't available. I let that go. Okay, I'll give you a week to prepare your interlocutory appeal on this issue. It was clear. It doesn't have anything to do with the exact trial date. It had to do with why he couldn't come in here and explain to me why he couldn't be ready within that eight months. That hasn't been done.
>
> MS. GOTHARD: He hasn't had eight months, Judge.
>
> THE COURT: I wanted him to come in here and explain to me why he couldn't do it sooner than October, November, just like I would require anybody else. I said this morning - - by yesterday actually.

MS. GOTHARD: Correct.

THE COURT: There should be a stipulation of facts, my order should be ready to sign [on] this interlocutory appeal. None of that has been done.

MS. GOTHARD: In attempting . . . to put together [a] stipulation of facts, we started talking about the fact that, in essence, procedurally this was so screwed up at this point because the . . . whole reason this came about is because the Court was setting a trial date that was not giving my expert sufficient time. Now the Court has done away with any trial date.

THE COURT: This is just game playing.

MS. GOTHARD: I don't consider it game playing, Judge.

         \*        \*        \*

THE COURT: No, it is. This is just gamesmanship and I am tired of this and I am not going to deal with this any more on the [defendant's] case.

MS. GOTHARD: I have also filed with the Court yesterday and I provided -- in the clerk's office yesterday and I provided it to the Court, an ex parte motion for additional funding and I am asking the Court based on the affidavits I filed - -

THE COURT: I am taking you off the case, you are done.

In its written order removing the Office of the Public Defender as counsel, the trial court made the following observations:

> The Court finds Ms. Gothard's representation that Assistant Public Defender, Mike Acuff, was "lead counsel" on the case disingenuous. The Court cannot recall Mr. Acuff's ever having been involved with the case during a court appearance, and Mike Acuff was never, to the Court's recollection, part of any of the ex parte hearings for expert services brought by Ms. Gothard. In fact, Ms. Gothard appears to have prepared all of the Affidavits presented to the Court during the ex parte proceedings.

The trial court also noted that even after the second hearing was postponed from the morning until the afternoon, Ms. Gothard still failed to secure the expert's attendance at the hearing and instead presented the court with an affidavit. The trial court concluded that "Ms. Gothard apparently never intended to have [the expert] present in [c]ourt, even though she represented to the [c]ourt that she would have him present later in the day." In support of the decision to remove Ms. Gothard as counsel, the trial court found as follows:

(1)     Ms. Gothard has too heavy of a case load at this time to be competent and effective in representing the Defendant in this case;

(2)     Ms. Gothard has committed misconduct by making material misrepresentations to the Court in this case;

(3)     Ms. Gothard has failed to comply with direct orders of this Court by not producing her expert in Court, or in the alternative, proceeding with her Interlocutory Appeal; [and]

-4-

(4)     Ms. Gothard instructed her expert to give priority to cases other than this case (prior to being granted a continuance) and thus has unreasonably delayed the trial of this case for several months.

In that same order, the trial court appointed private counsel to represent the defendant.

Initially, the decision to grant or deny a motion for continuance rests within the sound discretion of the trial judge and will be reversed on appeal only upon a clear showing of abuse of that discretion and prejudice inuring to the accused as a direct result of the ruling. State v. Caughron, 855 S.W.2d 526, 536 (Tenn. 1993); State v. Melson, 638 S.W.2d 342, 359 (Tenn. 1982). In our view, there was no abuse of discretion on the part of the trial judge for the failure to grant a seven-month continuance. As indicated, the trial judge was willing to grant a shorter continuance.

The Sixth Amendment to the United States Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend VI. Likewise, Article I, section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel." Tenn. Const. art. I, § 9. Where a defendant is financially unable to obtain representation, counsel must be provided by the state. Gideon v. Wainwright, 372 U.S. 335, 343 (1963). This right is qualified, however, and an indigent defendant has no absolute right to counsel of his choice. See State v. Huskey, 82 S.W.3d 297, 305 (Tenn. Crim. App. 2002). The right to be represented by counsel of one's choice "'must be balanced against the requirements of the fair and proper administration of justice.'" Id. (quoting United States v. Micke, 859 F.2d 473, 480 (7th Cir. 1988)). Accordingly, the trial court's action in matters regarding the appointment and relief of counsel will not be set aside on appeal absent a showing that the trial court abused its discretion. See id.; State v. Rubio, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987).

To make an informed judgment in this case, the issue of the qualified right to choose one's own counsel must be viewed against the backdrop of judicial discretion. See United States v. Dinitz, 538 F.2d 1214, 1219 (5th Cir. 1976). Trial courts have traditionally been vested with broad discretion to monitor the conduct of those permitted to practice before them. Id. In addition, because attorneys are officers of the courts before which they appear, see Sup. Ct. R. 9 § 3.1; Powell v. Alabama, 287 U.S. 45, 73 (1932); Cooper & Keys v. Bell, 127 Tenn. 142, 153 S.W. 844, 846 (1912), those courts possess the authority, within certain limits, to control attorneys' conduct, Dinitz, 538 F.2d. at 1219. Our supreme court has described the power of the trial court to control attorney conduct:

[A]ttorneys [are] officers of the court, and . . . courts have the inherent power to keep their forums pure by removing therefrom all parties appearing therein whose practices and acts tend to make them impure, or to impede, obstruct, and prevent the administration of the law, or destroy the confidence of the people in such administration.

Ingersoll v. Coal Creek Coal Co., 117 Tenn. 263, 98 S.W. 178, 188 (1906). The power of the trial court to control attorney conduct is particularly strong in the context of a trial, where an attorney's conduct may impede the orderly administration of justice. Dinitz, 538 F.2d. at 1219.

In addition to the power to control attorney conduct, the trial court possesses the power to control its own docket and its assignment of cases may not be manipulated by defense counsel or defendants. See Linton v. Perini, 656 F.2d 207, 209 (6th Cir. 1981). Accordingly, when chosen counsel represents that he cannot meet a set trial date, the trial court should consider both the defendant's right to counsel of his choice and the public's interest in prompt and efficient administration of justice. Id. If the trial court determines that the delay "is an attempt to manipulate a trial, or causes prejudice to the prosecution, or creates difficulties for the trial court, the trial court may interfere with the defendant's right to counsel of his own choice and require the case to proceed." Id. Where, however, the request is reasonable, there have been no prior delays, the length of delay is moderate, and appears to be for legitimate reasons, the court should allow a reasonable continuance. Id.

A reviewing court must be mindful that the Sixth Amendment right to counsel of one's choice should inform, rather than take the place of, judicial discretion. Dinitz, 538 F.2d at 1219. Consideration of this issue requires a balancing of the defendant's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. See Wilson v. Mintzes, 761 F.2d 275, 280-81 (6th Cir. 1985); see also United States v. Burton, 584 F.2d 485, 489 (D.C. Cir. 1978) ("The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force.").

This court considered a similar issue in Huskey. See Huskey, 82 S.W.3d at 306 (considering "whether and under what circumstances the trial court may remove counsel, over the objection of counsel and the defendant, once adversary proceedings have begun"). Huskey, charged in three separate cases with the rape and murder of prostitutes in the Knoxville area, had been represented by the same attorney for ten years. The pretrial issues were complex and included a number of appeals to both this court and to our supreme court. The attorney continued to represent Huskey even after one of the trials resulted in a mistrial. Eventually, the trial court removed counsel from the case sua sponte citing an overburden of baseless motions as the reason for the removal. The court ruled that the discretion to remove counsel absent the consent of the defendant and his counsel is limited and that "'courts should seek an accommodation reasonable under the facts of the particular case.'" Id. (quoting People v. Lucev, 233 Cal. Rptr. 222, 225 (Cal. Ct. App. 1986)). Concluding that the trial court should have considered less drastic alternatives than removal, a majority of the panel ruled that the trial court abused its discretion by removing Huskey's attorney from the case.

This case is distinguishable from Huskey. Huskey involved complex issues and a long-standing attorney-client relationship. In this case, Ms. Gothard had represented the defendant for less than one year prior to her removal. In addition, Ms. Gothard contended that Attorney Acuff had been more intimately involved with the case from the beginning. Further, the record does not indicate that

the issues are overly complex. In <u>Smith v. Superior Court of Los Angeles County</u>, 68 Cal. 2d 547 (Cal. 1968), cited in <u>Huskey</u> as the "lead case" on the issue of continuity of counsel, the California Supreme Court placed great emphasis on the complexity of the case in determining that the trial court had abused its discretion in removing counsel. The instant case involves a single count of murder and the facts surrounding the killing are largely uncontested.

Misrepresentations made by Ms. Gothard in seeking a delay of the trial rather than her "approach to litigation," as in <u>Huskey</u>, were the primary reason cited for removal. The record supports the finding of the trial court that Ms. Gothard made misleading statements. Ms. Gothard failed to comply with the trial court's directive to provide the mitigation expert as a witness in support of her claim for a continuance. The United States Supreme Court has held that "[t]he orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" <u>Maness v. Meyers</u>, 419 U.S. 449, 459 (1975) (quoting <u>United States v. Mine Workers</u>, 330 U.S. 258, 293 (1947)). In <u>Maness</u>, the Court ruled that orders of the trial court "must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation." <u>Id.</u>

Further, by her own admission, Ms. Gothard was burdened by a heavy caseload. She asserted her busy trial schedule as a primary basis for her request for a continuance. In a post-conviction hearing conducted only one week prior to the hearing on the motion for a continuance, Ms. Gothard admitted that she had been ineffective in that case because she was overworked. She also represented that no other attorney in her office would be available to try the case on the date set by the trial court because of the strain placed on that office by pending death penalty cases. Ms. Gothard directed her expert to work on pending death penalty cases as a priority, even though those cases were scheduled to be tried months after the defendant's scheduled trial. Finally, the record establishes that substitute counsel, appointed by the trial court at the time of Ms. Gothard's removal, has continued to provide services to the defendant despite the grant of this extraordinary appeal.

Under all of these circumstances, it is our view that the trial court did not abuse its discretion by removing Ms. Gothard as counsel. In this instance, the efficient administration of justice, on balance, must prevail over the right of counsel of choice. Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-7-