IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 12, 2003 Session

**MELVIN E. BEARD v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Williamson County**
**No. 601-190     Timothy L. Easter, Judge**

**No. M2002-02140-CCA-R3-PC - Filed May 9, 2003**

Petitioner, Melvin E. Beard, appeals from the denial of his petition for post-conviction relief.  In his appeal, Petitioner alleges that his trial counsel rendered ineffective assistance of counsel in connection with the negotiation and entry of Petitioner's best interest plea to the charge of sale and delivery of cocaine, that his best interest plea was involuntary, and that the factual basis presented by the State was insufficient to support  his plea.  After a careful review of the record in this matter, we conclude that the evidence does not preponderate against the trial court's findings of fact. We therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

George M. Allen, Brentwood, Tennessee, for the appellant, Melvin E. Beard.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**1. Background**

After his indictment for the sale and delivery of less than .5 grams of cocaine on December 14, 1998, Petitioner entered into a plea agreement with the State.  Following a plea submission hearing, the trial court accepted Petitioner's best interest plea to the charge and sentenced Petitioner to ten years as a Range II offender.  The trial court also imposed a fine of $2,000.  According to the terms of the plea agreement, Petitioner's sentence for this offense was ordered to run concurrently with Petitioner's sentences resulting from a previous conviction for the sale of cocaine and a second conviction for aggravated perjury.

On June 19, 2001, Petitioner filed a pro se post-conviction petition. As later amended, the petition alleged that his trial counsel, Eric Davis, rendered ineffective assistance during the negotiation and entry of Petitioner's best interest plea, that his plea was unknowing and involuntary, and that the factual basis presented at the hearing was insufficient to support his best interest plea.

In order to understand the issues raised in Petitioner's post-conviction petition, it is necessary to briefly outline the sequence of events leading up to his best interest plea. In 1997, Petitioner was placed in the community corrections program following a conviction of driving after being declared a motor vehicle habitual offender. In 1998, Petitioner tested positive for cocaine, and a hearing was held to determine whether Petitioner had violated the terms of his program. During the revocation hearing, Tracy Johnson, a confidential informant for the Williamson County Sheriff's Department, testified that she had purchased cocaine from Petitioner on two occasions during Petitioner's probationary period while her husband, Mr. Bennett, had made one purchase. At the revocation hearing, the prosecutor asked Petitioner if he had ever been involved in any way with the sale of cocaine while he was in the community corrections program. Petitioner testified under oath, "Not that I know of."

At the conclusion of the revocation hearing, the trial court revoked Petitioner's participation in the community corrections program. In addition, Petitioner was tried and convicted of aggravated perjury for which the trial court sentenced Petitioner to five years as a Range II offender. During this time, Petitioner was tried and convicted of the sale of cocaine based on his first sales transaction with Ms. Johnson. For this conviction, Petitioner received a sentence of ten years. Petitioner was also indicted for the second sale of cocaine to Ms. Johnson, and it is this transaction that provides the basis for his best interest plea before us today. Petitioner was not indicted for the sale of cocaine to Mr. Bennett.

Ms. Johnson testified at both of Petitioner's previous trials, and the evidence that supported his indictment for the second sale of cocaine to Ms. Johnson was essentially presented at both his trial for aggravated perjury and his revocation hearing. Mr. Davis, along with co-counsel, Lionel Barrett, was retained to represent Petitioner on the charges of aggravated perjury and the first sale of cocaine. Mr. Davis, however, was on vacation at the time the trial for sale of cocaine was conducted, and Mr. Barrett tried this matter alone. Although Petitioner did not retain Mr. Davis in connection with his second indictment for the sale of cocaine, the trial court appointed him to represent Petitioner in the matter.

The facts surrounding the second sale of cocaine are summarized as follows. Tracy Johnson arranged to purchase crack cocaine from Petitioner. After being outfitted with a recording device, Ms. Johnson went to Petitioner's home. Petitioner directed her to the kitchen where Ms. Johnson found Stacy Woods. Mr. Woods separated out an amount of crack cocaine from the drugs on the table in exchange for Ms. Johnson's money and looked to Petitioner to see if the amount was appropriate. Petitioner indicated his approval, and the transaction was completed. The substance purchased by Ms. Johnson tested positive for crack cocaine. The State informed the trial court at the

plea submission hearing that both Ms. Johnson and Mr. Woods would testify as to this sequence of events if the matter was tried.

## 2. Plea Submission Hearing

At the plea submission hearing, the trial court methodically questioned Petitioner as required by Rule 11 of the Tennessee Rules of Criminal Procedure. The trial court reviewed the elements of the offense of selling a controlled substance, and Petitioner responded that he understood the nature of the charges against him. Petitioner also said that he had reviewed the petition for waiver of trial by jury and request for acceptance of a plea of guilty with Mr. Davis. The trial court asked Petitioner several times if he wanted to plead guilty and whether his plea was voluntary. Petitioner responded affirmatively to the trial court's questions. Petitioner also said that he was satisfied with Mr. Davis' performance noting that Mr. Davis had done a "good job."

During the hearing, Petitioner was sometimes inarticulate, and Mr. Davis told the trial court that years of cocaine abuse had left Petitioner with a diminished capacity for processing information when he was under stress. It was Mr. Davis' opinion that Petitioner was evasive not because he did not understand the nature of the offense but because he did not think the charge was fair or that his conduct was criminal. Petitioner steadfastly maintained that he was a drug user, not a drug dealer, and that, at worst, he merely introduced people to those who could sell them drugs.

The State then recited the factual basis in support of the charge. The trial court asked Petitioner if he agreed with the facts presented, and, this time, Petitioner responded negatively. Specifically, he disagreed that the drugs were on his kitchen table when Ms. Johnson arrived and said that Stacy Woods had the drugs in his possession instead. At this point, Mr. Davis informed the trial court that Petitioner's plea was a "best interest plea."

The trial court explained the elements necessary to find that Petitioner was criminally responsible for the sale of cocaine and asked him if he understood. When Petitioner faltered, the trial court reminded Petitioner that the concept had been thoroughly explained in his first trial for the sale of cocaine. Petitioner then said that he understood that he could be found criminally responsible for Mr. Woods' conduct. The trial court concluded that the factual basis presented by the State was sufficient to support the plea to the charge of sale of cocaine under a theory of criminal responsibility. Petitioner indicated that he did not disagree with the trial court's conclusion.

## 3. Post-Conviction Hearing

At the post-conviction hearing, Petitioner testified that he did not remember reviewing the guilty plea agreement with Mr. Davis. Although he admitted that he agreed with the trial court's findings at the plea submission hearing, Petitioner stated in the post-conviction hearing that he does not understand why he was criminally responsible for Mr. Woods' conduct. As a result, Petitioner argues that his best interest plea was neither voluntary nor knowing. Petitioner said that Mr. Davis never discussed the theory of criminal responsibility with him and had he known that he was going to be convicted on this basis, he would not have entered a best interest plea. In fact, Petitioner was

not sure what a best interest plea meant, and Petitioner was not aware that Mr. Davis was going to change his guilty plea to a best interest plea in the middle of the proceedings. Petitioner said that he was in "bad shape" at the time of the plea submission hearing and told Mr. Davis that he was having trouble understanding the proceedings. Petitioner also said that he was unfamiliar with court proceedings.

In addition, Petitioner contends that Mr. Davis did not adequately investigate his case prior to advising Petitioner to plead guilty. Specifically, Petitioner thought Mr. Davis should have interviewed the confidential informant, Tracy Johnson, reviewed the tape recording of Petitioner's first trial to assess Ms. Johnson's credibility, and filed various motions on Petitioner's behalf. Petitioner said that he told the trial court at the plea submission hearing that he was satisfied with Mr. Davis' representation because Petitioner did not fully understand the function of his counsel in the proceeding until later.

On cross-examination, Petitioner agreed that he had been tried and convicted of aggravated perjury and sale of cocaine just six months before the entry of the plea on the second charge of sale of cocaine. In both of the prior convictions, Tracy Johnson was a witness for the State. Petitioner said Mr. Davis told him that the trial court would order him to serve his sentences for all three offenses consecutively if he did not plead guilty. Petitioner also admitted that he had pled guilty to several charges of driving while under the influence in the past and also to driving with a revoked license.

Petitioner's girlfriend, Jean Crafton, testified that Petitioner asked her to call Mr. Davis periodically to ascertain the status of his case. On one occasion, Ms. Crafton asked Mr. Davis what he was doing on Petitioner's case, and Mr. Davis responded that he was not doing "jack shit." On cross-examination, Ms. Crafton said that she frequently called Mr. Davis, and Mr. Davis had never failed to answer or return her calls.

Mr. Davis testified that he had participated in more than seventy jury trials and that he had a perfect grasp of the facts surrounding all of Petitioner's indictments. In his view, the only issue was whether Tracy Johnson would testify against Petitioner because she had been known not to appear in court. When Ms. Johnson did testify in Petitioner's other proceedings, Mr. Davis felt it was in Petitioner's best interest to plead guilty to the second drug charge and secure concurrent sentencing. Mr. Davis said that Petitioner did not want to testify at a second trial because he was afraid he would be tried for perjury again.

Mr. Davis said that he spent more time with Petitioner than he usually did with clients because of Petitioner's inability or refusal to understand what was happening to him. Although Petitioner apparently had trouble digesting information, Mr. Davis believed Petitioner was fully competent to stand trial. Mr. Davis said that he thoroughly reviewed the plea agreement with Petitioner, and both Mr. Davis and Mr. Barrett had discussed the concept of criminal responsibility with Petitioner on numerous occasions.

In response to Ms. Crafton's complaints, Mr. Davis did not confirm whether or not he used the term "jack shit" but stated that the gist of that response was correct. At the time Ms. Crafton called, there was nothing more to do on the second indictment for sale of cocaine. The first case as well as the aggravated perjury case had been tried, and Mr. Davis knew what the witnesses would say in the second drug case. At that the time Ms. Crafton called, Mr. Davis was waiting for Petitioner to decide whether he wanted to plead guilty or proceed to trial. If Petitioner decided he wanted a trial, Mr. Davis said that he was fully prepared to go forward with the case.

Although Petitioner faulted Mr. Davis for not filing any motions such as a motion to suppress, Mr. Davis responded that such motions were not necessary. The case, for example, did not involve any searches or confessions. As far as failing to review the tape of the first drug case that was held while he was on vacation, Mr. Davis felt that such activity would be a waste of time. Mr. Davis had seen Tracy Johnson testify before and had the opportunity at that time to assess her credibility on the stand, and Mr. Davis was aware of Ms. Johnson's prior convictions. As appointed counsel, he felt that watching an eight-hour tape would be "frivolous."

Mr. Davis said that his decision not to interview Ms. Johnson prior to trial was a tactical decision. Mr. Davis did not want Ms. Johnson to refer to any conversation between the two of them when he cross-examined her. Although he could not remember if he discussed this decision with Petitioner, he did discuss the strategy with the co-defendant's counsel.

At the conclusion of the post-conviction hearing, the trial court found Mr. Davis' testimony credible on all conflicting evidence. The trial court further found that Petitioner failed to show by clear and convincing evidence that his plea was not voluntarily and knowingly made or that the factual basis presented by the State in support of the charge against Petitioner was insufficient to support a finding of guilt. Accordingly, the trial court denied Petitioner's request for relief.

## 4. Standard of Review

In his appeal, Petitioner contends that the trial court erroneously found that (1) Mr. Davis provided effective assistance of counsel in the negotiation and entry of his best interest plea to the sale and delivery of cocaine; (2) Petitioner's plea was voluntarily and knowingly made; and (3) the factual basis presented by the State was sufficient to support a conviction of sale and delivery of cocaine pursuant to a theory of criminal responsibility.

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990), *perm. to appeal denied* (Tenn. 1990). Therefore, this Court may not re-weigh or re-evaluate these findings nor substitute its inferences for that of the trial judge unless the evidence in the record preponderates against those findings. *State v. Honeycutt*, 54 S.W.3d 762, 763 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). In addition, questions concerning the credibility of witnesses and the weight and value given their testimony is resolved

by the post-conviction court, and not this Court. *Id.* However, the trial court's application of the law to the facts is reviewed de novo, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *Burns*, 6 S.W.3d at 461.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In other words, a petitioner must show that he or she would not have pleaded guilty and would have insisted on going to trial had it not been for the deficiencies in counsel's performance. *Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369-70, 88 L. Ed. 2d 203 (1985).

In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id.* at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

A. Ineffective Assistance of Counsel

Petitioner alleges that Mr. Davis was deficient for not interviewing the State's key witness, Tracy Johnson, prior to trial. Petitioner argues that he was prejudiced by Mr. Davis' conduct because he was left without sufficient information with which to make a decision to plead guilty or to proceed to trial. Further, Mr. Davis' failure to inform Petitioner of critical decisions during trial preparation prevented him from making an intelligent assessment of the potential risks if the matter was tried.

Mr. Davis' decision not to interview Ms. Johnson was a matter of trial strategy which this Court will not, as a general rule, second-guess. *Hellard*, 629 S.W.2d at 9. Mr. Davis knew what Ms. Johnson would say in court, and both Mr. Davis and Petitioner had ample opportunity to view Ms. Johnson's demeanor in a courtroom setting and assess her credibility during Petitioner's other

-6-

proceedings. In fact, the testimony that Ms. Johnson was prepared to offer in Petitioner's second drug trial was essentially the same testimony provided at Petitioner's aggravated perjury trial during which both he and Mr. Davis were present. The record shows that Mr. Davis frequently communicated with Petitioner about the details of his case. Although he may not have specifically discussed his decision not to interview Ms. Johnson with Petitioner, Mr. Davis retained the right to make tactical and strategic decisions based on his professional judgment. *See Leslie v. State*, 36 S.W.3d 34 (Tenn. 2000). Petitioner has not shown by clear and convincing evidence that Mr. Davis was deficient in this regard.

Petitioner interprets Mr. Davis' remarks during the post-conviction hearing concerning the practical differences between the level of service provided by retained as opposed to appointed counsel to indicate that Mr. Davis would have reviewed the tapes of Petitioner's first trial if he had been retained rather than appointed for the second charge. Certainly, we agree with Petitioner's larger argument that there is no meaningful distinction between an indigent's and a non-indigent's Sixth Amendment right to counsel once counsel has been appointed. *See State v. Huskey*, 82 S.W.3d 297 (Tenn. Crim. App. 2002). However, we do not interpret Mr. Davis' comments in the same manner as Petitioner. Mr. Davis had already testified that viewing the tape of Petitioner's first trial would not have been particularly helpful since he knew what Ms. Johnson would say. Petitioner is not entitled to relief on this issue.

Finally, after hearing conflicting versions of the telephone call between Ms. Crafton and Mr. Davis, the trial court accredited the testimony of Mr. Davis concerning his conversation with Ms. Crafton. As noted above, factual questions involving the assessment of a witness's credibility are left to the responsibility of the trial court who is in the best position to view the demeanor of the testifying witnesses. *See Burns*, 6 S.W.3d at 461. The evidence does not preponderate against the trial court's findings that Mr. Davis rendered effective assistance to Petitioner, and Petitioner is not entitled to relief on this issue.

For the foregoing reasons, we find that the evidence does not preponderate against the trial court's finding that Petitioner failed to establish by clear and convincing evidence that Mr. Davis provided ineffective assistance.

### B. Best Interest Plea

At the plea submission hearing, Mr. Davis expressed his opinion that years of cocaine abuse had impaired Petitioner's ability to process information well when he was under stress. Petitioner argues that his mental state at the time of the submission hearing and his denial of any criminal responsibility in the matter for which he was indicted rendered his plea involuntary and unknowing.

When an accused enters a plea of guilty, constitutional considerations mandate that the plea be voluntarily, understandingly and knowingly entered. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1713, 23 L. Ed. 2d 274, 279 (1969); *State v. Neal*, 810 S.W.2d 131, 134-35 (Tenn. 1991) *overruled on other grounds by Blankenship v. State*, 858 S.W.2d 897, 902 (Tenn. 1993). By

entering a plea, the defendant waives certain constitutional rights including the privilege against self-incrimination, the right to a trial by jury, and the right to confront witnesses. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1714. The defendant's waiver of these constitutional rights may not be presumed from a silent record. *Id.*

A plea cannot be voluntary if the accused is "incompetent or otherwise not in control of his mental facilities" at the time the plea is entered. *Blankenship v. State*, 858 S.W.2d 897, 904-05 (Tenn. 1993) (quoting *Brown v. Perini*, 718 F. 2d 784, 788 (6ᵗʰ Cir. 1983)). The trial court must ascertain if the defendant fully understands the significant consequences of his or her plea. *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). The trial court may consider a number of factors including the defendant's relative intelligence, his familiarity with criminal proceedings, whether he was represented by competent counsel and had the opportunity to confer with counsel about his options, the advice given by counsel and the trial court about the charges against him and the penalty to be imposed, and the defendant's reasons for pleading guilty. *Blankenship*, 858 S.W.2d at 904.

Based on a careful review of the record which includes a video recording of Petitioner's plea submission, we do not conclude that the evidence preponderates against the post-conviction court's finding that Petitioner's plea was voluntarily and knowingly entered. At the post-conviction hearing, Petitioner testified that Mr. Davis had not explained the plea submission process to him and he was unfamiliar with court proceedings notwithstanding his prior trials and conviction. However, Mr. Davis said that he not only read the plea agreement to Petitioner but explained it, and Petitioner was clear that he wanted to avoid a trial. Petitioner was not only afraid that he might be charged again for perjury if he testified, but he was also scared to give any testimony adverse to third parties. Although Petitioner's comprehension of legal concepts was sometimes slow, Mr. Davis at no time doubted that Petitioner was competent to stand trial. Mr. Davis said that Petitioner understood that a plea would result in no more jail time while a trial would expose Petitioner to the risk of consecutive sentencing. Both Mr. Davis and Mr. Barrett had thoroughly explained the theory of criminal responsibility to Petitioner.

The post-conviction court found that Petitioner did not show by clear and convincing evidence that his plea was involuntary. As evidenced by the video tape of the plea submission hearing which the post-conviction court refers to in its order, Petitioner understood the nature of the crime, the range of the sentence for the offense, the distinction between concurrent and consecutive sentencing, and the differences between his various indictments. The post-conviction court also noted that Petitioner assured the plea submission court that his plea was voluntary on numerous occasions and testified that he was not on any drugs that would affect his ability to make a meaningful decision. The post-conviction court specifically accredited Mr. Davis' testimony as to Petitioner's comprehension of the consequences of his plea. Petitioner is not entitled to relief on this issue.

## C. Factual Support for Petitioner's Conviction

Relying on this Court's decision in *State v. Lord*, 894 S.W.2d 312 (Tenn. Crim. App. 1994), Petitioner argues that the factual basis presented by the State at the plea submission hearing was insufficient to support a conviction of sale of cocaine under a theory of criminal responsibility. Specifically, Petitioner contends that the State offered no facts that Petitioner benefitted from the sale, had a duty to prevent the sale or acted intentionally to promote or assist in the sale as required by Tennessee Code Annotated section 39-11-402.

We note first that a challenge to the sufficiency of the factual basis of the indictment leading to an accused's plea does not rise to the level of a constitutional violation and therefore does not present a ground for relief in a post-conviction proceeding. *Powers v. State*, 942 S.W.2d 551, 555 (Tenn. Crim. App. 1996); Tenn. Code Ann. § 40-30-203. While the *Boykin* court concerned itself with the safeguards necessary to ensure the voluntariness of the waiver of the constitutional rights inherent in a guilty plea, our supreme court developed stricter standards in *State v. Mackey*, 553 S.W.2d 337, 340-41 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). The *Mackey* requirements were later adopted into Rule 11 of the Tennessee Rules of Criminal Procedure. Our courts have consistently held that the *Mackey* guidelines that exceed the *Boykin* standards are supervisory rather than constitutionally based and, therefore, not cognizable in a petition for post-conviction relief. *Powers*, 942 S.W.2d at 555; *Hicks v. State*, 983 S.W.2d 240, 247 n. 10 (Tenn. Crim. App. 1998); *Sneed v. State*, 942 S.W.2d 567, 568-69 (Tenn. Crim. App. 1996); *Teague v. State*, 789 S.W.2d 916, 917 (Tenn. Crim. App. 1990). Therefore, even if Petitioner was able to establish the insufficiency of the evidence supporting his indictment, he would not be entitled to relief.

Nonetheless, we conclude that the trial court made sufficient inquiry into the underlying facts before accepting Petitioner's best interest plea. Rule 11 provides that the trial court should not enter a plea without first ascertaining to its satisfaction that there is a factual basis for the plea. This guideline exists primarily to ensure "that the defendant's guilty plea is made with his understanding that his admitted conduct actually constitutes the offense with which he is charged or a lesser included one." *Lord*, 894 S.W.2d at 316 (citing *McCarthy v. United States*, 394 U.S. 459, 466-67, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969)).

The factual basis recited by the State at the plea submission hearing shows that Ms. Johnson contacted Petitioner in order to purchase cocaine, that Petitioner arranged for Ms. Johnson to make the purchase at his residence, and that Petitioner approved the amount of drugs provided by Mr. Woods to Ms. Johnson in exchange for her money. The trial court concluded that both the plea submission court and Mr. Davis had adequately explained the theory of criminal responsibility for the conduct of another, and Petitioner affirmatively indicated his understanding as to how the theory was applicable in his case. From these facts, we find that the evidence does not preponderate against the trial court's determination that there was a sufficient factual basis for the Petitioner's plea.

**CONCLUSION**

For the foregoing reasons, we find that Petitioner has failed to establish by clear and convincing evidence that his plea was invalid for any reason or that Mr. Davis rendered ineffective assistance of counsel. The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE